**Richard Thomas HINDS, Appellant,**

v.

**UNITED STATES of America, Fulton
Insurance Company, Appellees.**

No. 19787.

United States Court of Appeals
Ninth Circuit.

July 7, 1965.

James E. Green, No. Hollywood, Cal.,
for appellant.

Manuel L. Real, U. S. Atty., Donald A. Fareed, Asst. U. S. Atty., Chief, Civil Sec., Dzintra I. Janavs, Asst. U. S. Atty., Los Angeles, Cal., for appellee.

Before BARNES, DUNIWAY, and ELY, Circuit Judges.

ELY, Circuit Judge:

Appellant, plaintiff below, is the owner of certain property which, on October 13, 1962, was damaged by fire. Alleging that the fire originated in a refuse dump owned by the Federal Government, appellant sought the recovery of his loss under the provisions of Section 1346 and related sections of Title 28, U.S.C., the Federal Tort Claims Act. The District Court, upon the basis of its findings of fact and conclusions of law, entered its judgment in favor of the Government. In his appeal, appellant strongly urges that certain of the trial court's finding of fact were clearly erroneous and that the District Court improperly arrived at the legal conclusions which support the judgment.[1]

The refuse dump, which was a pit or trench sixty feet long, twenty feet wide, and twelve feet deep, was located in Inyo National Forest, California, approximately two miles from appellant's property. It was not actually used by the Government, but Government personnel, directly employed by the United States Forest Service, did, from time to time, undertake to burn refuse placed in the dump by campers and local residents of the area. On the morning of October 6, 1962, seven days before the appellant's property was damaged, two Forest Service employees had burned a quantity of inflammable refuse which had accumulated on the south edge of the dump. Both men were experienced in the burning of dumps and in the control of such

fires. One of them had, on at least three previous occasions, burned accumulated refuse in the same dump. On October 6th, after the refuse had burned, one of the employees repeatedly turned over the fire's residue with a shovel and repeatedly sprayed the area with water from a tank truck. Two trips were made for the purpose of refilling the tank truck, and altogether, over 450 gallons of water were sprayed or poured upon the dump. When the work was completed at approximately 2:30 in the afternoon of October 6th, there was, according to testimony produced by the Government, no remaining unburned material and no evidence or indication of smoke or fire. Later in the same afternoon a witness who traveled "right past the dump twice" observed "water standing all over". He noted the absence of steam and described the dump area as "cold". Two days later, one of the Forest Service employees returned to inspect the dump and to ascertain that there was no fire. He testified that, at that time, there was no fire and that no additional refuse had been placed in the dump area. While a witness produced by appellant testified that late in the afternoon of October 10th he observed smoke rising from the center of the dump, other witnesses, who claimed to have passed near the dump at various times from October 6th to as late as 2 p.m. on October 13th, testified that they saw no fire or smoke in or from the dump. It was shown that on the day of the fire which damaged appellant's property, there were numerous campers, hikers, and other persons in the vicinity of appellant's property and in the general area.

Following the fire of October 13th, crosscuts were made in the dump, and studies were made of material which was taken therefrom. Conflicting opinions

---

[1] Fulton Insurance Company, plaintiff in intervention, sought to recover from the Government, under its subrogation rights, the amount of its loss under a contract of fire insurance with the plaintiff property owner. There was a dispute between the plaintiff in intervention and the plaintiff as to the manner in which recovered sums, if any, should be distributed. We assume that the dispute stemmed from disagreement over the expense of litigation. The issue of this dispute, as well as the issue of the amount of damages sustained by the plaintiff in the principal case, was not reached. The judgment in favor of the Government was also against the plaintiff in intervention. The plaintiff in intervention did not appeal.

were expressed by investigators produced by the parties and shown to be qualified as experts in matters pertaining to fire and fire control.

From the evidence, the District Court found as a fact that the brush fire of October 13th which damaged appellant's property "was started by live ash or burning trash blown from the dump". At the same time and in the same finding, the District Court continued, "Any such live ash or burning trash was started in the dump by a person or persons using the dump after October 8, who intentionally or unintentionally set fire to trash they deposited there". Moreover, in one of its findings of fact, the District Court concluded, "There was no deepseated fire in the dump from the burning of the dump on October 6 by the Forest Service." The District Court then arrived at two important "Conclusions of Law" which it directed be considered as findings of fact also. They were:

"II

The United States Forest Service employees were not negligent in extinguishing or attending to the dump after burning it on October 6, 1962.

III

The burning and extinguishing of the dump on October 6, 1962, by the U. S. Forest Service and its subsequent attendance to the dump, were not a cause of plaintiff's alleged damages."

◼ From a careful review of the evidence, some of which has been recited, we believe that it fairly supports the determinations made by the District Court. We cannot set aside findings of fact unless they are "clearly erroneous", and we are admonished that "due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses * * *". Fed.R.Civ.P. 52(a). We may hold a finding to be "clearly erroneous" even though there is evidence to support it, but we cannot disturb such a finding unless from the entire evidence, we are "left with the definite and firm

conviction that a mistake has been committed". United States v. United States Gypsum Company, 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948) ; see also Calhoun v. Bernard, 333 F.2d 739 (9th Cir. 1964) ; Glens Falls Indem. Co. v. United States, 229 F.2d 370 (9th Cir. 1955). There is no such "definite and firm conviction" here. It is quite evident that the trial court was convinced from the whole evidence, including the testimony of the two Government employees and the manner of its giving, that the fire which was ignited on October 6th was totally extinguished on the same afternoon, seven days before the inception of the brush fire which spread to appellant's property.

◼ Appellant urges that the District Court failed improperly to apply the doctrine of *res ipsa loquitur* and thus to draw an inference of responsibility on the part of the Government. The California courts have evolved a principle, akin to the classical doctrine of *res ipsa loquitur*, which may justify an inference of negligent conduct on the part of a defendant even though the defendant may not exclusively control the instrumentality which produces a plaintiff's injury. Even under this liberalized principle, however, the inference cannot arise until the plaintiff's evidence demonstrates, as a minimum, that in the light of human experience, the injury probably resulted from negligence and that it is more probable than not that the defendant was the responsible party. Quintal v. Laurel Grove Hospital, 41 Cal. Rptr. 577, 397 P.2d 161 (1964) ; Siverson v. Weber, 57 Cal.2d 834, 836, 22 Cal. Rptr. 337, 372 P.2d 97 (1962) ; Faulk v. Soberanes, 56 Cal.2d 466, 470, 14 Cal. Rptr. 545, 363 P.2d 593 (1961). In our opinion, the evidence failed to meet the requirements which would support the application of any principle under which the trial court might have presumed that negligent conduct on the Government's part proximately contributed to appellant's damage. Furthermore, had the District Court improperly drawn such an inference, its findings and judgment establish that the inference, being inconclusive,

was dispelled by evidence believed by the trial judge, as believed by us, to have been sufficiently rebutting. See Seneris v. Haas, 45 Cal.2d 811, 291 P.2d 915, 53 A.L.R.2d 124 (1955); Note, Cal.Jur.Inst. Civ. (4th ed. 1956), Vol. 2, p. 621.

Affirmed.