349 F.2d 583
 Christine VAN DER VEEN, a Minor, by and through her Guardian
ad Litem, Patricia Van Der Veen; Edward Van Der
Veen and Patricia Van Der Veen, Appellants,
v.
The UNITED STATES of America, Appellee-Appellant, v. SNOW
VALLEY, INC., a California corporation, Appellee.
 No. 19625.
 United States Court of Appeals Ninth Circuit.
 Aug. 19, 1965.
 
 A.R.E. Roome, Cameron W. Cecil, Los Angeles, Cal., for appellants.
 Manuel L. Real, U.S. Atty., Donald A. Fareed, Asst. U.S. Atty., Chief, Civil Sec., Donald J. Merriman, Asst. U.S. Atty., Los Angeles, Cal., for the United States.
 Crider, Tilson & Ruppe, Los Angeles, Cal., for appellee Snow Valley, Inc.
 Before BARNES, JERTBERG and ELY, Circuit Judges.
 ELY, Circuit Judge:
 
 
 1
 Appellant, plaintiff below, sought, unsuccessfully, to recover damages from the United States of America. Her suit followed an accident which occurred on February 21, 1960, when she was fifteen years of age. The accident occurred on real property owned by the United States, and the suit was instituted under the provisions of the Federal Tort Claims Act, 28 U.S.C. 1346, 2671-2680.
 
 
 2
 The parcel of land on which the accident occurred was located within the boundaries of the San Bernardino National Forest. The parcel, consisting of approximately eighty acres, had, prior to the accident, come into the possession of Snow Valley, Inc., a corporation. Pursuant to Congressional authority (16 U.S.C. 497), the Secretary of Agriculture had issued to Snow Valley, Inc. certain permits which covered the parcel and authorized 'constructing and maintaining thereon facilities to conduct a winter sports resort and ski school.' As consideration for the permits, the Government received a relatively small annual rental fee plus a percentage of gross receipts obtained from admission fees.
 
 
 3
 The permittee enclosed within a fence a certain area within the whole acreage covered by the permits. Within the enclosure was a hillside down which, when it was snow covered, those who paid an admission fee to Snow Valley, Inc. might slide on toboggans.
 
 
 4
 On the day of the accident, appellant, accompanied by a youth, was admitted to the enclosed toboggan area following payment by the youth of his and appellant's admission fees. Shortly thereafter, while appellant and her companion were sliding down the hillside, appellant was thrown from the toboggan and seriously injured. She alleged negligence on the part of the Government, and the Government, in turn, filed a third party suit against Snow Valley, Inc. alleging, in general, that under an indemnity agreement executed by Snow Valley, Inc. in favor of the Government, the Government should recover from Snow Valley, Inc. any damages which might be awarded to plaintiff in her action against the Government. Following trial, the district court entered judgment in favor of the Government in the main action and against the Government and in favor of Snow Valley, Inc. in the third party suit. There is an appeal from the latter judgment also, the Government insisting that the district court, after having found against the plaintiff in the main case, should have dismissed the third party action rather than entering a judgment upon the merits.
 
 
 5
 The judgment in the main action rests primarily upon the district court's finding of fact number 11 and conclusions of law numbers I and II. These are as follows:
 
 
 6
 '11. There is no evidence that any employee of the Government while acting within the scope of his employment did any act or omitted to do any act which caused the toboggan to bounce, giving rise to the injury sustained by plaintiff Christine Van der veen.''I
 
 
 7
 There is no evidence that any employee of the Government committed a negligent or wrongful act or omission while acting within the scope of his employment.
 
 II
 
 8
 There is no evidence that the injury sustained by plaintiff Christine Van der veen was caused by any negligent or wrongful act or omission of any employee of the Government while acting within the scope of his employment.'
 
 
 9
 We are urged to hold that the finding and conclusions are not supported by the evidence. This we cannot do.
 
 
 10
 We have carefully reviewed the testimony. The plaintiff was unable to establish the cause of her fall with any degree of certainty. At its best, from her standpoint, the testimony disclosed that the toboggan 'bounced' when it overslid a 'mound' or 'hump' in the snow. There was no evidence that the irregularity resulted from the presence of any object or condition which might reasonably be said to be foreign to a recreational snow slide facility. To the contrary, there was evidence to the effect that the presence of humps and mounds of snow, not only are common, but also are inevitable in areas of toboggan traffic. An experienced observer, a District Ranger of the United States Forest Service, testified that on the day of the accident the snow depth of the toboggan area ranged from twelve to thirty-six inches. He revealed that in the early morning of the day of the accident, the temperature was freezing but that at approximately noontime, shortly before the accident occurred, the temperature had warmed to a point causing the top two or three inches of snow to become 'very wet', to 'soften up', and to be in such condition that it would 'move, more or less flow, when pressure was applied'. Additional testimony revealed that on the day of the accident approximately two thousand persons had been admitted to the slide area and that for their recreation, they had used sleds of ski-runner type, rubber inner tubes, discs sometimes known as 'flying saucers', and toboggans.
 
 
 11
 In Broderson v. Rainier Nat'l Park Co., 187 Wash. 399, 60 P.2d 234, 237 (1936), it was written:
 
 
 12
 'The sport is admittedly dangerous, and only those resort to it who are prepared to accept the risk. The snow upon which the toboggans move is itself one of the most unstable of elements. Its condition and serviceability for this particular sport is subject to hourly variations of weather and temperature. On the afternoon of the accident, the testimony indicates that the weather was mild and the snow soft and therefore more conducive to create the condition (mounds, humps, and depressions) alleged by appellant than if cold and the snow dry.'
 
 
 13
 In the cited case, the plaintiff sustained injuries when his toboggan struck a snow hump, lifted from the surface, became unmanageable, and made a 'nose dive' back into the snow. Here, the facts are closely similar, and we believe the observations of Washington's Supreme Court to be reasonable and especially relevant.
 
 
 14
 Appellant contends that the Government should have taken affirmative steps to warn her of possible danger. Evidence that on the date of the accident there was posted a clearly visible sign warning entrants, in effect, that they utilized the slide area at their own risk was contested by appellant. Assuming the absence of a warning sign, appellant's awareness of hazard is shown by certain of her own testimony which follows:
 
 
 15
 'Q Prior to the time that you and Ron went into the area did you stand outside and observe the people inside tobogganing? A Yes, sir. Q And during the time that you watched them while you were outside did you notice any of the people falling off toboggans? A Yes, sir. Q During that time were you similarly watching the people on the toboggan? A Yes, sir. Q At this time too I believe you testified you saw people falling off the toboggan? A Yes, sir. Q What was your discussion? A Well, I said I was a little afraid of it, that I didn't know whether I should try it or not, and he said there was nothing to it, it was a cinch, he had been on them before. Q What were you afraid of? A I don't know what I was afraid of. I was just afraid. Q You saw other persons going down and falling off. Were you afraid that you would fall off? A Yes, sir. Q And of course you were aware that you might fall off, isn't that right? A Yes, sir.'
 
 
 16
 There is no duty to communicate a warning of danger to one to whom the danger is obvious. During her redirect examination, appellant's testimony indicated that while she was aware of risk that she might 'fall' from the toboggan, she was not fearful that she might 'bounce' from it. This subjective distinction is too fine to support her claim of inadequate knowledge of all normal hazards incident to the toboggan ride, including surface irregularities doubtless created by every passing or overturning sled and falling rider.
 
 
 17
 In Murphy v. Steeplechase Amusement Co., 250 N.Y. 479, 166 N.E. 173, 174 (1929), Chief Justice Cardozo wrote:
 
 
 18
 'One who takes part in such a sport accepts the dangers that inhere in it so far as they are obvious and necessary, just as a fencer accepts the risk of a thrust by his antagonist or a spectator at a ball game the chance of contact with the ball.'
 
 
 19
 In Wright v. Mt. Mansfield Lift, Inc., 96 F.Supp. 786 (D.Vt.1951), a skier sought damages for injuries sustained when her skiis struck a snow-covered tree stump. The court said,
 
 
 20
 'In this skiing case, there is no evidence of any dangers existing which reasonable prudence on the parts of the defendants would have foreseen and corrected. It isn't as though a tractor was parked on a ski trail around a corner or bend without warning to skiers coming down. It isn't as though on a trail that was open work was in progress of which the skier was unwarned. It isn't as though a telephone wire had fallen across the ski trail of which the defendant knew or ought to have known and the plaintiff did not know. The trail at the point of the accident was smooth and covered with snow. There were no unexpected obstructions showing. The plaintiff, in hitting the snow-covered stump as she claims to have hit, was merely accepting a danger that inheres in the sport of skiing. To hold that the terrain of a ski trail down a mighty mountain, with fluctuation in weather and snow conditions that constantly change its appearance and slipperiness, should be kept level and smooth, free from holes or depressions, equally safe for the adult or the child, would be to demand the impossible. It cannot be that there is any duty imposed on the owner and operator of a ski slope that charges it with the knowledge of these mutations of nature and requires it to warn the public against such.'
 
 
 21
 We are obliged to sustain the trial court's factual determinations unless, from the entire evidence, we are 'left with a definite and firm conviction that a mistake has been committed.' United States v. United States Gypsum Co., 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948); Hinds v. United States, 348 F.2d 630 (9th Cir. 1965); see Fed.R.Civ.P. 52(a). From the whole testimony, to some of which we have made specific reference, we are convinced that the trial court's dispositive finding and conclusions were amply supported and that no 'mistake has been committed'.
 
 
 22
 We are also of the opinion that the district court did not err in entering judgment against the Government in its third party action against its permitee. By its own allegations, its right to recover was made contingent upon a determination of its liability to the injured plaintiff. Since the trial, in which Snow Valley, Inc. participated, failed to establish the essential predicate for the third party claim, the third party defendant was entitled to judgment.
 
 
 23
 Affirmed.