UNITED STATES of America,
Appellant,

v.

The STATE OF WASHINGTON and
Wenairco, Inc., a corporation,
Appellees.

The STATE OF WASHINGTON,
Appellant,

v.

UNITED STATES of America,
Appellee.

No. 19907.

United States Court of Appeals
Ninth Circuit.

Oct. 19, 1965.

914

---

Frank R. Freeman, U. S. Atty., Carroll D. Gray, Asst. U. S. Atty., Spokane, Wash., John L. Bishop, Reg. Solicitor, Frank M. Potter, Jr., U. S. Dept. of Interior, Washington, D. C., for appellant and cross appellee U. S. A.

John J. O'Connell, Atty. Gen. of Wash., R. Ted Bottiger, Sp. Asst. Atty. Gen. of Wash., Basil L. Badley, Asst. Atty. Gen. of Wash., for appellee and cross appellant state of Washington.

John H. Caley, Seattle, Wash., for appellee Wenairco, Inc.

Before JERTBERG, DUNIWAY and ELY, Circuit Judges.

ELY, Circuit Judge:

This action arose from the crash of an aircraft and the provisions of the Federal Tort Claims Act, 28 U.S.C. § 1346(b) and 28 U.S.C. § 2671 et seq.

The plane, a light tandem type, was owned by Wenairco and at the time of the crash was occupied by the pilot, Sam Violett, a bailee, and Martin Braun, his passenger. The men were then engaged in civil defense practice for the State of Washington, and both were killed. The State fulfilled its obligation for payment of compensation benefits to the survivors of its employees and then sought, by action against the United States, to recoup its loss. Wenairco also sued the Government, claiming damages for the destruction of its plane.

The Government's liability is claimed to rest upon its negligence in the construction and operation of an electrical transmission line which the plane struck before falling to the earth. The line spanned the Entiat River valley between Entiat and Ardenvoir, Washington, and the span, 2260 feet long, was supported by two towers on the opposite sides of the valley. Each of the towers was 113.5 feet in height and placed at such elevations that the span's wires hung from 430 feet to 525 feet above the valley's floor. The wires were seven in number, six high-tension conductors 1¼ inches in diameter, and a ground wire, ⅝ inch in diameter, strung from the peaks of the towers and at the higher elevation. The plane, flying at an elevation of 460 feet or less above ground level, struck either the middle or the bottom conductor, 465 feet and 430 feet above ground, respectively.

The trial, carefully conducted by the court with the assistance of able counsel, resulted in the imposition of liability upon the Government for the damage to the aircraft and for Washington's loss resulting from the death of Braun, the passenger. Recovery of loss flowing from the death of Violett, the pilot, was denied, the court finding that Violett was negligent, and that his negligence was a contributing proximate cause of the accident.[1] From this latter determination, Washington protests in an appeal which has no substantial merit. Our review of the evidence convinces us that the trial court's finding of contributory negligence on the pilot's part was fairly justified, if not required.

Violett was a retired service flyer, competent and experienced. For five years, he had resided in the area where the crash occurred and where there was common knowledge of the general location of the transmission line. The crash occurred at approximately 10:30 o'clock in the morning of a calm, clear day, and at earlier hours of the same morning, the pilot had twice flown over the line in the general area of its span across the valley.

---

[1]. All parties agree that, under Washington law, contributory negligence of the pilot is not imputable to the owner-bailor so as to bar its recovery for damage to the airplane.

He was thoroughly familiar with common aeronautical charts, among which are Sectional Aeronautical Charts published by the Government's Department of Commerce, Coast and Geodetic Survey, and containing written warning of the existence of the "Prominent transmission line." The record is bare of evidence to support a determination which would wholly exculpate the pilot from contributive negligent conduct.

In its appeal, the Government emphasizes the clear culpability of the pilot and forcefully urges that such must be held to have been the sole proximate cause of the disaster.

The District Court's judgments against the Government rest primarily upon its amended Conclusion No. 2, as follows:

"The defendant was negligent in failing to provide suitable devices designed to warn airmen of the existence and of the heights of the power lines, in constructing and maintaining the power lines at heights described in Finding of Fact No. 2, and in not having its power lines follow the contour of the land; and further, the defendant was negligent in not having actual knowledge that the wires across the Entiat Valley were actually over five hundred feet in height from the date of installation until shortly before the trial."

This conclusion was followed by amended Conclusion No. 4, reading:

"The negligence of the defendant described in Conclusion No. 2 was the proximate cause of the accident."

■ We disagree with the conclusion that the Government's negligence in "not having actual knowledge that the wires * * * were actually over five hundred feet in height" was a proximate cause of the accident. As originally designed and intended, the highest wire of the span was to hang no higher than about 490 feet above ground level. The plans were examined by the Federal Aviation Agency, which reported that it had no objection from an aeronautical point of view. As completed by the contractor to whom the installation was entrusted, the ground wire was hung 35 feet above the height of the Government's knowledge or expectation. But the wire which was struck was a lower wire, hanging about 60 or 90 feet beneath that wire whose precise height was found to be negligently unknown to the Government. Furthermore, the attitude of the plane was not downward at time of impact, as if the pilot, suddenly observing the higher wire, strived to fly beneath it. The trial court found that immediately before the impact, the pilot saw the wires and was attempting to climb as the plane struck a lower conductor at a height level which was known to the government. Under these facts, we cannot see a reasonable basis upon which to predicate a determination that negligent ignorance of the precise height of the highest, unstruck wire was a proximate cause of the crash.

■ We also reject the position that liability of the Government may be predicated upon its alleged negligence "in constructing and maintaining the power lines at heights described * * * and in not having its power lines follow the contour of the land; * * * *"[2]

■ It is unnecessary to dwell upon the Government's insistence that it is protected against liability by that portion of the Federal Tort Claims Act which specifies that the Act shall not subject the Government to suit for "Any claim * * * based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a).

2. The District Court's Conclusion No. 2 is also iterated in its Finding No. 57, which reads, "Bonneville Power Administration also failed to exercise reasonable care in constructing the subject power lines at the heights mentioned in Finding No. 2, in not putting the wires on the floor of the valley, and in maintaining the subject top ground wire without discovering its height and marking the same."

Conceding, *arguendo,* that the location and erection of the line were planned and done pursuant to the "exercise or performance" of "discretionary" functions or duties such as to immunize the Government against liability for negligent design and placement, the statutory immunity is not so far-reaching as to afford protection against governmental liability for operational mismanagement. United Air Lines, Inc. v. Wiener, 335 F.2d 379 (9th Cir.), cert. dismissed under Rule 60, 379 U.S. 951, 85 S.Ct. 452, 13 L.Ed.2d 549 (1964); United States v. Hunsucker, 314 F.2d 98 (9th Cir. 1962).

Our conclusion, quite simply, is that the evidence does not support the finding of actionable negligence in the Government's constructing and maintaining the lines at the mentioned heights and in not installing the lines to follow the contour of the land. Power lines must be installed, and it is common knowledge that they must traverse rivers and valleys in sparsely inhabited, mountainous areas, such as was the countryside at the point of the Entiat River span. Here, the first wires were strung a dozen years before the crash, not in an ordinary flight path but at a comparatively low elevation in a remote location between the higher altitudes of a valley's bordering peaks. The evidence disclosed careful engineering, commendable consideration of cost factors, and guidance of the Federal Aviation Agency. In the design for the span, in the placement of its conductors, and in its maintenance at the significant heights, there was no negligence, "operational" or "discretionary," on the part of the Government.

Finally, we consider evidence bearing upon the District Court's determination that the Government was remiss in duty "to provide suitable devices to warn airmen of the existence and of the heights of the power lines." While, at the time of the accident, there was no warning device suitable for attachment to the electricity conductor lines, the court found, "A 20″ ball type marker was in existence on July 9, 1961, which could have been installed on the ground wire." The Government urges that this finding is immaterial, inasmuch as the ground wire met no impact. As we see it, the district judge might logically have reasoned that warning devices on the highest wire might well have alerted the pilot to danger at all lower levels and that had there been adequate warning of the highest wire, the pilot would have sought elevation, as he did when he finally observed the lower wires, and thus have necessarily avoided contact with the latter.

It is well established that there may repose a legal duty to communicate or to attempt to communicate adequate warning of existing, foreseeable hazard. Indian Towing Co. v. United States, 350 U.S. 61, 76 S.Ct. 122, 100 L.Ed. 48 (1955); Everitt v. United States, 204 F.Supp. 20 (S.D.Tex.1962); Hernandez v. United States, 112 F.Supp. 369 (D. Hawaii 1953).

We have reviewed the evidence, including numerous photographs of the scene of the crash and of the span of wires and its supporting towers in their relationship to the terrain. The towers, neither brightly painted nor equipped with fixed or flashing lights,[3] cannot be said to be wholly unobscured in their surroundings.

The Government contends that since the pilot knew of the existence of the lines, there was, as to him, no duty for additional warning. See Van der Veen v. United States, 349 F.2d 583 (9th

---

3. In its Finding No. 53(e), the District Court recites that on the date of the accident, "most large transmission line towers were of unpainted, galvanized steel construction throughout the State of Washington, although some were painted as a warning to airmen." While the court, in Finding No. 23, found that it was not the *practice* to paint transmission towers, "except in proximity to aviation facilities," some towers not in proximity to such facilities had been painted. We see, in Finding No. 43(a), that "A few miles from the Entiat River crossing the same transmission lines cross the Columbia River. This Columbia River crossing is marked by painting the transmission towers and by the attachment of lights to the conductors."

917

Cir. 1965). The contention is untenable. The pilot was knowledgeable as to the general location of the span but immediately before impact and with negligent inattention, was obviously not aware of its precise location and its proximity to his approaching aircraft.[4] One may know of the general location of a house and pass it by. Drivers may generally know that they must cross a heavily traveled thoroughfare, but there may be a need for traffic control or warning devices to alert the inattentive. Negligence which comes from momentary inattention or mental digression is not uncommon, and duty to warn of danger runs not only to the careful, but also to one whose unalerted carelessness may victimize the innocent.

As recently as March 3, 1965, we upheld a finding of negligence of the Government in failing adequately to warn pilots of the existence of a 1900 foot span of wires owned by the Government and strung from Washington's mainland to an island off the shore. El Paso Natural Gas Co. v. United States, 343 F.2d 145 (9th Cir. 1965). An airplane, flying over water, collided with the span at an elevation of only 100 feet. Three or four years previously, another plane had collided with the span. The distinction is not significant nor is the fact that the contributory negligence of the pilot in El Paso, flying at an elevation of only 100 feet and in violation of civil air regulations, was more patent and culpable than was the negligence of Violett in the case at bar. In El Paso, we affirmed the trial court in its finding of contributory negligence on the pilot's part, and we also upheld its conclusion that "[T]he Coast Guard in failing to install warning devices failed to exercise reasonable care to avoid unreasonable risk of harm to low

flying aircraft and was thereby negligent."

It would be inconsistent in the extreme to uphold, as not clearly erroneous, a finding that warning devices should have been placed on a span only 100 feet high and extending across open sea and, six months later, to overrule a finding that there should have been more adequate warning of wires extending over 350 feet higher into air space and spanning a river valley.[5] Moreover, if the flagrant negligence of the pilot in El Paso could not be held to have constituted an intervening proximate cause sufficient to sever the chain of the Government's causation, then, *a fortiori*, neither can the negligence of the pilot here.

Affirmed.

4. In Paragraph (g) the Finding No. 43, the District Court recognized, as to the pilot, that "During his fatal flight he may not have known the exact location of the line and the exact height of the wires."

5. Although sparsely populated, the valley was habitated. There were nine inhabited dwellings "within a one-half mile radius" of the "point where the lines in question cross the Entiat River Valley." (Finding No. 38) Also, it was found that "Within 5 seconds before impact the aircraft passed within 500 feet of a structure downstream from the span." (Finding No. 39)