Clifford **ANDERSON** and Irene Louise Anderson, Appellants,

v.

**LYON COUNTY, Iowa, Appellee.**

No. 55443.

Supreme Court of Iowa.

April 25, 1973.

David J. Stein, Milford, for appellants.

Fisher & DeWaay, Rock Rapids, for appellee.

Heard before MOORE, C. J., and RAWLINGS, REES, REYNOLDSON and HARRIS, JJ.

REYNOLDSON, Justice.

This law action against defendant county was brought to jury trial by plaintiffs Clifford Anderson (driver) and Irene Louise Anderson (passenger) for personal injuries and property damage sustained when the car in which they were traveling fell into deep holes in defendant county's road. Plaintiffs appeal from adverse verdict directed by trial court at the conclusion of all evidence. We reverse and remand.

On the night of April 7, 1969, a flood washed out large pits on both sides of a bridge located on east-west Lyon County blacktop road L–20, approximately two miles east of the town of George. Repair was delayed and the county attempted to erect and maintain certain barricades and warnings. The existence, sufficiency, and maintenance of these devices at the time of plaintiffs' accident on May 26, 1969, were sharply contested in the evidence at trial.

County's motion for directed verdict contained the usual grounds reciting plaintiffs' failure to prove negligence on the part of the county, asserting the proof established the contributory negligence of each plaintiff, and relying on the alleged obligation of the court to set aside verdicts for plaintiffs in the event the case was submitted to the jury.

I. Basic to our review of trial court's ruling are certain well established propositions. In considering the propriety of a motion for directed verdict the court views the evidence in the light most favorable to the party against whom the motion was made. Rule 344(f)(2), Rules of Civil Procedure. A movant for a directed verdict may be considered as admitting the truth of all evidence offered by the adverse party and every favorable inference which may be fairly and reasonably deducted therefrom. Schneberger v. Glenn, 176 N.W.2d 782 (Iowa 1970); Reserve Insurance Company v. Johnson, 260 Iowa 740, 150 N.W.2d 632 (1967).

With these rules in mind, we summarize a portion of the evidence supporting plaintiffs' claims.

The holes at the bridge were first discovered when a motorist dropped into them on April 8, 1969. Through traffic across the bridge was impossible. At that time the county attempted to limit travel on the blacktop road with snow fence barricades constructed to be thrown open by farmers still using portions of the road east of the washouts for field and home entrances. As plaintiffs were traveling west, only warning devices east of the washouts are pertinent to this litigation.

The first barricade and devices were erected at the first intersection east of the scene of the accident, a distance of about one-half mile. The second and last barricade and devices were placed at an unaffected bridge some distance east of the flood-damaged bridge. There were no barricades or warning devices controlling west-bound traffic at the site of the washouts, where the bridge had no approaches. Portable signs were established at certain of the intersections east of the bridge. After the erection of these devices and before plaintiffs' accident the barricades, lights and signs had been tampered with several times, to the extent a deputy sheriff was posted in the vicinity one night in an attempt to apprehend those responsible. On a prior occasion, an unknown motorist had driven through one of the snow fence installations, but it had been replaced.

About dusk at approximately 9:00 P.M. on May 26, 1969, plaintiffs, husband and wife, were proceeding westward on the blacktop road. They were going to the town of George, where a young relative was being graduated from high school.

Plaintiffs were unfamiliar with this road and had no prior knowledge of the defects at the bridge. Both testified they saw no barricades, signs or other warning devices, except plaintiff driver testified he saw two rolls of snow fence piled up along the south side of the road and thought one carried a sign about road repair. He drove over one spot which appeared to have been recently patched. He thought the repair work was completed. He necessarily crossed over the first bridge where the last barricade was initially erected. He saw another spot which also appeared to have been recently patched. As he was upon it he saw it was a deep hole in the road. His car partially jumped that hole, skidded across the second bridge and fell into a similar washout, 10 to 15 feet deep, on the west side.

Plaintiffs called as a witness Dick M. Kruse, an employee of defendant county responsible for checking on the warning devices in question. He testified he checked the barricades at about 6:30 P.M. on the evening of the accident and they were half open so he closed them. An hour or so after the accident he checked the devices on the east side of the bridge and found the easternmost snow fence open on the south side and the one at the first bridge open on the north side.

Neither Kruse nor any witness for the county was familiar with the Uniform Manual for Control Devices on Highways in Iowa. Plaintiffs' evidence proved the manual, promulgated by the Iowa State Highway Commission, is generally used as a standard for erection of signs on county, state and city highways. Their expert witness testified in this situation the accepted standard, found in the publication, would be warning signs at 1000 and 500 feet and a "class 1" fixed barricade at the site of the danger. Such a barricade would be made of 8 or 10 inch by 2 inch wood beams extending shoulder to shoulder, painted black and white diagonally, with the top board about five feet above the highway. There was room between the last farm entryway and the easternmost pit to construct such a permanent barricade.

Evidence was introduced without objection that following plaintiffs' accident such permanent-type barriers were erected on both sides of the washouts.

A defense witness, employee of the county, testified he frequently saw the two snow fence barricades before plaintiffs' accident. The easternmost barricade was open on the south side of the road. The next barricade was open on the north side of the road. Plaintiffs' witness Petersen testified when he observed the easternmost barrier at about midnight following the accident, it consisted of a new snow fence stretched completely across the road. He got fresh red paint on his hands. A steel post had been freshly driven into the middle of the road to support the snow fence.

The deputy sheriff testified on deposition he was the first to inspect the devices east of the bridge after the accident, at about 10:45 P.M. to 11:00 P.M., and at that time two snow fence barriers were both open on the north side of the road. This is consistent with plaintiffs' testimony they never left their right-hand side of the highway nor encountered obstacles in proceeding toward the washouts. Some of this testimony of defendant's witness was corrected from the witness stand, but the jury could have believed his deposition testimony brought out at trial.

Another witness for plaintiffs corroborated their claim there was no warning or detour sign at the intersection at which they came onto the blacktop, some five miles east of the washouts.

There were no eye-witnesses to the accident other than plaintiffs. No one else testified regarding the position or location of the warning devices at the time of the mishap. All the evidence demonstrates that with the exception of some steel fence posts to which the snow fence was sometimes tied, all of the warning signs, lights and devices relied on by the county were

movable, temporary, and on skids or saw-horses. The picture exhibits, contrary to testimony of defense witnesses, do not indicate it would be a time-consuming task to either take down or re-erect the warning devices portrayed.

Applying the rules we are required to follow in this instance, we hold a jury question was generated on the issue of the county's negligence in failing to warn plaintiffs of the danger in the manner alleged in their petition. On permitting such factual disputes to be resolved by the jury, see generally Greenwell v. Meredith Corporation, 189 N.W.2d 901 (Iowa 1971) and Adams v. R. S. Bacon Veneer Company, 162 N.W.2d 470 (Iowa 1968). No question is presented relating to governmental immunity. See chapter 613A, The Code.

II. Plaintiffs claim to have raised the issue of sufficiency of the warning devices, assuming they were placed as claimed by the county. Plaintiffs particularly rely on the county's violation of the standards promulgated by the Iowa State Highway Commission. The pattern of plaintiffs' negligence specifications is as follows:

"Defendant had knowledge of said existing holes and had no barricades placed in the vicinity of said holes *which would have warned Plaintiff of the impending and dangerous condition of said blacktop road.*" (Emphasis supplied.)

Although this interpretation of the negligence specifications may be strained, when the motion to direct verdict was before the court, plaintiffs' counsel pointed out the language relied on and argued adequate barricades could have and should have been placed in front of the holes in the blacktop. That the county understood an issue was raised relating to the adequacy of these warning devices is demonstrated by the following affirmative allegation in its answer:

" * * * Defendant alleges that it had placed *good and sufficient* warning signs and warning lights upon said road; that it had erected barricades across said road * * *." (Emphasis supplied.)

In any event, these parties did litigate the issue of the adequacy of the warning devices used by defendant. We have already referred to the testimony of plaintiffs' expert and the standards proved. Much of the county's testimony was designed to refute the claimed inadequacy of the means it employed to alert travelers of the dangerous road condition.

We recently held evidence of private safety codes is admissible but not conclusive on the issue of negligence. Jorgensen v. Horton, 206 N.W.2d 100 (Iowa 1973). Apparently the traffic-control device manual referred to in the evidence in the case before us was adopted by the Iowa State Highway Commission pursuant to statutory authority. Section 321.252, The Code. Plaintiffs neither pleaded nor relied on violation of § 321.255, The Code, which requires local authorities to place and maintain traffic-control devices conforming to the state manual and specifications. Therefore we are not required to decide whether violation of the manual in this case would be negligence per se.

In Reserve Insurance Company v. Johnson, 260 Iowa 740, 150 N.W.2d 632 (1967) we quoted from Reed v. Harvey, 253 Iowa 10, 13, 110 N.W.2d 442, 444 (1961) the general rule applicable here:

"Permitting the introduction of testimony on an issue not specifically pleaded obviates the necessity of its formal presentation. Where, as here, parties proceed without objection to try an issue, even though not presented by the pleadings, it amounts to consent to try such issue and it is then rightfully in the case."

See also Roth v. Bluffs City Motors, Inc., 186 N.W.2d 634 (Iowa 1971).

Applying this rule, plaintiffs were entitled to go to the jury on the issue of the

sufficiency of the warning devices employed by the county.

III. There remain the issues of plaintiffs' contributory negligence. Of course, the burden of pleading and proving such negligence was upon the county. Section 619.17, The Code.

Generally the question of contributory negligence and proximate cause are for the jury; it is only in the exceptional case these issues may be decided as matters of law. Rule 344(f)(10), R.C.P. Even where the facts are not in dispute or contradicted, if reasonable minds might draw different inferences from them, a jury question is engendered. Rule 344(f)(17), R.C.P. We have observed that in the absence of an admission by the adverse party, it is not often that a party having the burden of proof upon an issue establishes it as a matter of law. Hedges v. Conder, 166 N.W.2d 844 (Iowa 1969).

We hold this is not the exceptional case in which the defendant carried this burden and proved plaintiffs' negligence as a matter of law. Plaintiffs' unfamiliarity with the road and their testimony, coupled with the evidence relating to the vandalism and frequent displacement of the movable and temporary warning devices used, generated factual issues for the jury on the question of contributory negligence.

IV. As the case must be remanded for new trial, in fairness we must refer to a specification of negligence in the petition which stated,

"Defendant had knowledge of said existing holes and failed to place a warning sign at the turn onto said blacktop road; about five miles east of the aforementioned bridge which Plaintiff used to drive onto said blacktop road."

In addition to the general ground in the motion for directed verdict that plaintiffs failed to prove any negligence on the part of the county, the latter asserted (with respect to the above specification) that the proof failed to show plaintiffs actually entered the blacktop road at the five mile intersection. We believe testimony of plaintiffs' witness Feldman was sufficient to overcome that claimed deficiency in the evidence.

But there is nothing in the record before us which implies a duty on the county's part to place a warning sign at an intersection five miles from a road defect. The expert's testimony relating to safety standards did not touch on this issue.

Depending on the proof on retrial, this specification of negligence may or may not be sufficiently supported to present a jury issue. Nothing we have said in this decision should be considered determinative of that question.

Reversed and remanded.