**Everett L. SEIBER, as Administrator of the Estate of Billy Gene Seiber, Deceased, Appellant,**

**v.**

**The STATE of Iowa, Appellee.**

**No. 55833.**

Supreme Court of Iowa.

Oct. 17, 1973.

Rehearing Denied Dec. 13, 1973.

Getscher, Redd & Getscher, Hamburg, for appellant.

Richard C. Turner, Atty. Gen., and Larry M. Blumberg, Asst. Atty. Gen., Des Moines, for appellee.

REES, Justice.

This appeal is from the order of the trial court sustaining defendant's motion for summary judgment.

The petition of the plaintiff alleges that plaintiff's decedent was driving south on U. S. highway 275 approximately 2½ miles south of Sidney, at about 1:15 a. m. on April 1, 1969, when decedent's automo-

bile collided with a deer, and was then forced into the path of an oncoming truck. Decedent was killed in the collision, and plaintiff brought the action against the State, asserting that the State and its employees and agents were negligent in failing to warn plaintiff's decedent of the presence of deer on the highway, either by the placing of adequate signs or otherwise, or in failing to establish a reduced night-time speed limit in the area because of the hazard of deer entering the highway, or in failing by means of fences, barriers or other means to prevent or reduce the hazard of deer entering the highway, and in propagating, increasing and maintaining deer in such numbers as to create a continuous danger and hazard to users of the highway.

The action is brought pursuant to the Tort Claims Act, chapter 25A, Code of Iowa, 1966. Plaintiff's petition asserts that claim had been filed pursuant to the provisions of the Tort Claims Act, but that the same was denied by the State Appeal Board.

Defendant-State answered, admitting the factual recitation set out in plaintiff's petition, but denying all of the allegations of negligence and plaintiff's claim of State's liability. The State affirmatively alleged in answer that plaintiff's decedent was familiar with the conditions prevailing on the highway at the point where the collision occurred; that deer are *ferae naturae* and have the inherent characteristic of roaming about at will, knowing no bounds; that the proximate cause of the accident was the negligent manner in which plaintiff's decedent was operating his motor vehicle and that such contributory negligence barred any recovery by plaintiff.

Defendant-State further affirmatively alleged in answer that chapter 109, The Code, 1966, establishes title and ownership of all wild game and animals in the State, and that such ownership constitutes the State as trustee for the people of the State; that section 25A.14(1), The Code,

1966, precludes recovery of damages when a claim is based upon the exercise of a discretionary function, and that all decisions involving dealing with deer as to their number, location and so forth are decisions which necessarily involve the exercise of discretion, and that the placement of signs on the highways identifying certain locations as "deer crossings" also involves the exercise of discretion.

Defendant-State later filed its motion for summary judgment, asserting that section 25A.14(1) precludes plaintiff from maintaining his action, as all of the specifications of negligence set forth in plaintiff's petition involve and fall within the discretionary function exception to the Act, which will be hereinafter referred to. The motion for summary judgment was supported by affidavit. After resistance to the motion for summary judgment was filed by plaintiff, hearing was had thereon and the motion was sustained.

In its order sustaining the defendant's motion for summary judgment, the court found that each of the allegations of negligence advanced by plaintiff in his petition involve matters which are purely within the discretion of the State Highway Commission or the State Conservation Commission, and therefore come within the exceptions embraced in section 25A.14 of the Tort Claims Act.

I. The form and content of plaintiff's brief make it difficult for us to approach the exact errors which plaintiff relies upon for reversal. There is no statement of the case, no reference to the Record, no citations of authorities, and no arguments of errors. Defendant calls attention to the insufficiency of plaintiff's brief in these particulars, and directs us to the pronouncements of this court in State v. Masters, 171 N.W.2d 255 (Iowa 1969), in which we held the brief and argument of appellant insufficient and declined to consider the appeal on the basis of such a brief. In view of the fact, however, that the matter before us was disposed of on a

motion for summary judgment, we have elected to consider the matters inherent in this appeal.

II. Section 25A.14(1), The Code, 1966, provided:

"The provisions of this chapter shall not apply to:

"1. Any claim based upon an act or omission of an employee of the state, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a state agency or an employee of the state, whether or not the discretion be abused."

We have no difficulty in reaching the conclusion that all of the specifications of negligence which the plaintiff alleges in his petition come within the discretionary function exclusion of section 25A.14(1), The Code. Succinctly stated, plaintiff's action is based upon the propositions that the State should have either warned of the presence of deer or should have prevented deer from entering the highway.

The policy determination of the State Highway Commission not to post "deer crossing" signs on the highways of this State most certainly involves the exercise of discretion. Whatever correlated responsibility might have rested upon the Conservation Commission also involved a discretionary function.

We are cognizant of the fact that lines of demarcation have been drawn in governmental tort liability cases with regard to the "discretionary function" exception and the application of the "planning" and "operational" tests in reaching decisions under particular facts. An extensive discussion of the application of the discretionary function exclusion of section 25A.14(1) by this court is found in Stanley v. State, 197 N.W.2d 599, 602 (Iowa 1972). In *Stanley* this court affirmed a judgment

in favor of a claimant who sustained injury when a truck in which she was riding was forced off the road at a point where a 10- to 12-inch dropoff from the edge of the paving was permitted to exist during construction. Warning lights and signs had been placed along the edge of the highway under construction, and the court held the exercise of discretion had ceased before the commission of the acts which the trial court found to be negligent, namely: creating and maintaining a dangerous dropoff from 10 to 12 inches between the edge of the paving and the shoulder of the road. The decision to keep the highway open during construction, this court found, was within the proper discretionary function for which no liability would attach, but once that decision was made negligence in carrying out that policy could not be excused on the ground that negligent acts were performed in the exercise of discretion within the meaning of the statutory exemption.

We do not have such a situation confronting us here; the policy determination not to erect signs could not have been implemented in any sense. Unless it could be said that the policy determination was "operational" rather than a "planning" function, the discretionary aspects of section 25A.14(1) are entirely preclusive of plaintiff's right to maintain this suit.

■ We conclude the policy determination not to erect signs along highways of this State, and particularly at the point in the public highway where plaintiff's decedent's automobile came into collision with a deer, involve the exercise of discretion at the planning stage and that the trial court properly sustained defendant's motion.

We refer to the authorities cited in Stanley v. State, *supra*, as being supportive of our conclusion in this regard.

■ III. We deem it unnecessary to consider the other propositions or errors urged by plaintiff. Obviously, the Tort Claims Act did not create a new cause of

action; it simply provided the jurisdictional foothold for pursuing rights or causes already existing. See Feres v. United States, 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152. So far as we have been able to determine, there is no statutory or common-law basis for such a cause of action as plaintiff asserts here. Such being true, no liability could attach as against the State in this case.

IV. We are satisfied the pleadings of the plaintiff presented no issue of fact to try and that the court's order sustaining the defendant's motion for summary judgment was correct.

This case is, therefore, affirmed.

Affirmed.

MOORE, C. J., and RAWLINGS, J. concur.

UHLENHOPP, MASON and LeGRAND, JJ., concur specially.

REYNOLDSON and McCORMICK, JJ., dissent.

HARRIS, J., takes no part.

UHLENHOPP, Justice (concurring specially).

I concur in affirmance of the judgment on the ground that the papers in this particular case do not state facts or circumstances from which a jury could reasonably find that due care required a warning. But I am not prepared to say that facts and circumstances could never exist which would give rise to such a duty. If due care requires a warning, the State cannot avoid liability on the basis of a discretionary function. Stanley v. State, 197 N.W. 2d 599 (Iowa).

MASON and LeGRAND, JJ., join in this concurrence.

REYNOLDSON, Justice (dissenting).

The sole issue presented by this appeal is whether the alleged negligent conduct of the State's agents was a simple failure to perform discretionary functions. In effect the majority holds the State would not be liable if it deliberately elected not to warn of a highway danger—that would be the "planning" stage of a discretionary function. The implication is, if it attempted to warn in a slipshod manner, liability would attach—that being the "operational" phase of a discretionary function. I suggest neither the record nor law supports majority's decision.

I. A proper determination of this appeal requires it first to be viewed from a wide perspective. It is important to note the State relies on a limited exception to the broad sweep of the Tort Claims Act, which rejected the archaic concept of governmental immunity. See Graham v. Worthington, 259 Iowa 845, 146 N.W.2d 626 (1966).

We have recognized our act is patterned on the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2674, 2680. Saxton v. State, 206 N.W.2d 85 (Iowa 1973); Hubbard v. State, 163 N.W.2d 904 (Iowa 1969). We are guided by interpretations federal courts have given identical federal legislative language. Saxton v. State, supra; Stanley v. State, 197 N.W.2d 599 (Iowa 1972).

The federal decisions have retreated from the loose interpretation of "discretionary function" which supported the decision in Dalehite v. United States, 346 U.S. 15, 73 S.Ct. 956, 97 L.Ed. 1427 (1953). In the Supreme Court decisions, this was first apparent in Indian Towing Co. v. United States, 350 U.S. 61, 76 S.Ct. 122, 100 L.Ed. 48 (1955), as we pointed out in *Stanley*, supra. There have followed a number of lower federal court decisions which confirm the interpretive emphasis is on the general imposition of liability, not the exception.

Typical of the current legal thought is Judge Holtzoff's language in McNamara v.

United States, 199 F.Supp. 879, 880–881 (D.C.1961):

> "The Federal Tort Claims Act is a comprehensive statute, the purpose of which was to waive governmental immunity to suit in tort which this country originally inherited from the immunity accorded to the King of England, and it might be said in passing that the British Sovereign has also waived immunity to suit in tort some years ago. The Act was a far-reaching reform in jurisprudence. It was the work of many minds over many years, and unlike other statutes waiving governmental immunity to suit in specific matters, *this statute shall receive and has received a liberal construction.* * * *
>
> "[T]here are certain torts that are expressly excepted from the Act. They are listed in 28 U.S.Code, § 2680. The Court is of the opinion that *these exceptions should be narrowly construed.*" (Emphasis supplied.)

Also relevant on this point are those federal decisions cited in *Stanley,* supra, 197 N. W.2d at 603.

Resolving the appeal *sub judice* in light of the federal decisions which we have said will guide us, we should instill life into the legislative direction that the State is liable for the " * * * omission of any employee of the state while acting within the scope of his office or employment * * *." [§ 25A.2(5), The Code], and that "[t]he state shall be liable in respect to such claims to the same claimants, in the same manner, and to the same extent as a private individual under like circumstances * * *." [§ 25A.4, The Code]. At the same time, the exception found in § 25A.14, The Code, retaining immunity where the employee has failed to exercise or perform a discretionary function, should be narrowly construed.

II. Here plaintiff's affidavit in resistance to motion for summary judgment plainly shows a State decision to protect and promulgate deer herds in Iowa and Fremont County, where this tragedy occurred. The wooded creek which crossed the limited-access, high-speed throughway at the place of collision formed an umbilicus between extensive state park and wildlife areas, all constituting sanctuaries for deer. This point was, in fact, a funnel for the passage of deer deprived of access across the highway to the north and south of the creek by high-cut banks. The deer population in Fremont County, under strict State protection, rose from none after decimation in early times, to 176 in 1964 and to 451 in 1968. The number of deer killed in vehicle collisions rose from six in 1964 to 30 in 1968.

The affidavits of neither litigant support majority's conclusion the State made a discretionary policy decision not to post "deer crossing" signs on Iowa highways. These instruments do prove this policy was in fact adopted and operational, but no signs were posted in the area here involved because two accidents had not yet occurred at this place.

A State defense that its duty to warn did not arise until there had been two resulting collisions would be summarily rejected in the case of any other danger to highway travel. But here the State apparently believes it is saved from liability because the deer are *ferae naturae.* I have no doubt the State's commendable policy to promote the increase of deer population resulted from the exercise of a discretionary function. But I cannot concede it follows that the State has a discretion not to warn highway travelers of the attendant danger at deer-crossing points.

III. Inherent in the State's rationale, adopted by the majority, is the concept that the State's title and ownership of the deer (§ 109.2, The Code) is a governmental function ("as trustee for the people of the state") and therefore immunity somehow, and outside the statute, reattaches. This position is probably deemed essential to the State's defense, for if, in the language of

the statute, it is liable to the same extent as a "private individual under the circumstances," law which may be applicable is established. Proof that animals are running at large is prima facie evidence of the owner's negligence. Leaders v. Dreher, 169 N.W.2d 570 (Iowa 1969); see § 188.2, The Code. We have recognized the basic rule that ordinarily the owner of a wild beast is absolutely liable for damages or injury caused by such an animal. Wenndt v. Latare, 200 N.W.2d 862, 869 (Iowa 1972); see Clark v. Brings, 284 Minn. 73, 169 N.W.2d 407 (1969); 4 Am.Jur.2d Animals § 80, pp. 326–328; Annot., 21 A.L. R.3d 603 (1968).

The posture of this appeal does not require us to resolve whether the rules which apply to an individual should also define the State's duty or liability in these circumstances. It only demands we hold, as federal decisions have held, the time-worn "governmental function" concept cannot be readopted as a shield in these situations. The same argument was rejected in Indian Towing Co. v. United States, supra, when Justice Frankfurter, speaking for the majority, warned the adoption of that defense would "push the courts into the 'non-governmental'—'governmental' quagmire that has long plagued the law of municipal corporations." (350 U.S. at 65, 76 S.Ct. at 124, 100 L.Ed. 53–54).

The identical defense was raised in Rayonier, Inc. v. United States, 352 U.S. 315, 77 S.Ct. 374, 1 L.Ed.2d 354 (1957), in which a seven-member majority reversed a district court dismissal of an action for losses allegedly caused by negligence of United States employees in fighting a forest fire. Pertinent here is the following from that decision, 352 U.S. at 318–320, 77 S.Ct. at 376–377, 1 L.Ed.2d 358–359:

"It [United States] argues that the Act only imposes liability on the United States under circumstances where governmental bodies have traditionally been responsible for the misconduct of their employees and that neither the common law nor the law of Washington imposes liability on municipal or other local governments for the negligence of their agents acting in the 'uniquely governmental' capacity of public firemen. * * * But * * * [w]e expressly decided in Indian Towing that the United States' liability is not restricted to the liability of a municipal corporation or other public body and that an injured party cannot be deprived of his rights under the Act by resort to an alleged distinction, imported from the law of municipal corporations, between the Government's negligence when it acts in a 'proprietary' capacity and its negligence when it acts in a 'uniquely governmental' capacity. To the extent that there was anything to the contrary in the Dalehite Case it was necessarily overruled by Indian Towing.

"It may be that it is 'novel and unprecedented' to hold the United States accountable for the negligence of its firefighters, but the very purpose of the Tort Claims Act was to waive the Government's traditional all-encompassing immunity from tort actions and to establish novel and unprecedented governmental liability. * * * There is no justification for this Court to read exemptions into the Act beyond those provided by Congress."

The *Rayonier* rationale has been followed and amplified by a series of lower federal court decisions, including Pigott v. United States, 451 F.2d 574 (5 Cir. 1971); United States v. State of Washington, 351 F.2d 913 (9 Cir. 1965); and American Exch. Bank of Madison, Wis. v. United States, 257 F.2d 938 (7 Cir. 1958).

IV. For the purposes of this appeal we need only determine that the State had the duty to warn of a situation constituting a danger to motorists on a through highway. We have recognized that duty in numerous decisions, including the *Stanley* case. See Anderson v. Lyon County, 206 N.W.2d 719 (Iowa 1973); Parmenter v. City of Mar-

ion, 113 Iowa 297, 85 N.W. 90 (1901); 40 C.J.S. Highways § 262, pp. 306–312. In cases arising under the almost identically-worded federal act, the federal courts have incisively imposed a duty to warn of dangers created by governmental activities clearly within the sphere of discretionary function. Typical of these decisions are Indian Towing Co. v. United States, supra (failure to warn shippers a lighthouse beam was not operating); United States v. State of Washington, supra (failure to warn pilots of existence and heights of power lines); Somerset Seafood Co. v. United States, 193 F.2d 631 (4 Cir. 1951) (failure to properly warn shippers of the location of a wreck); Everitt v. United States, 204 F.Supp. 20 (S.D.Tex.1962) (failure to warn shippers of submerged piling); Bulloch v. United States, 133 F.Supp. 885 (D.Utah 1955), second case, 145 F.Supp. 824 (D.Utah 1956) (failure to warn sheepherders of nuclear tests); Hernandez v. United States, 112 F.Supp. 369 (D.Haw. 1953) (failing to warn of the existence of a road block).

V. This is not a situation in which the State was required to exercise a discretionary option to protect either deer or the lives and property of people. If it were, the plain duty of the State could readily be found in the Iowa Constitution, art. I, § 2, "Government is instituted for the protection, security, and benefit of the people * * *." The State's mandatory function to protect people and their property, *and* its discretionary function to protect deer, are not restrained, but are in fact jointly implemented, by. imposing on the State a duty to adequately warn of deer crossings on the highways. The record before us discloses a startling State indifference to the right of travelers to be protected in their lives and property.

The State's employees appear motivated solely by an intent to protect deer, not people. Thus the State's Wildlife Superintendent stated in his affidavit, "This policy [posting deer crossing signs] was continued for several years during which time the policy was studied and data gathered to determine if the posting of the signs would cause a decrease in the deer kill across the state." Certainly the family of this decedent could be excused in failing to see humor in the State Conservation Commission's letter to plaintiff's attorneys stating, "Their [deer crossing signs] effectiveness is questionable, partially because deer pay no attention to them." The whole thrust of the State's evidence and attitude is summed up in the State's brief:

"Because the State has assumed a duty to protect wild animals and thereby benefit the people of the state does not mean that the state has also assumed the duty to protect the people and insure their safety against wild animals."

I say the State does have a duty to protect the people, and the very minimum required is that travelers be warned of places where the State-expanded deer population constitutes a threat to highway safety. The State has no discretion to avoid that obligation.

I would reverse, and remand for trial.

McCORMICK, J., joins in this dissent.