242 N.W.2d 262 (1976)
Addie M. SYMMONDS, Administrator of the Estate of Virgil S. Sprague, Deceased and David W. Herring, Administrator of the Estate of Bertha J. Herring, Plaintiffs,
v.
CHICAGO, MILWAUKEE, ST. PAUL AND PACIFIC RAILROAD COMPANY, et al., Defendants.
CHICAGO, MILWAUKEE, ST. PAUL AND PACIFIC RAILROAD COMPANY, Cross-Petitioner-Appellant,
v.
SCOTT COUNTY, Iowa, Cross-Petition Defendant-Appellee.
No. 2-57379.
Supreme Court of Iowa.
May 19, 1976.
*263 Randy Duncan, of Duncan, Jones, Riley & Finley, Des Moines, and Robert A. Van Vooren, Davenport, for appellant.
Seymore M. Raben, Davenport, for appellee.
Heard by REYNOLDSON, Acting C.J., and MASON, RAWLINGS, REES and HARRIS, JJ.
REYNOLDSON, Acting Chief Justice.
This appeal presents the issue whether a county may be liable in damages for failure to place a stop sign on a secondary road at a particularly dangerous railroad crossing where no warning devices were installed by the railroad.
December 17, 1972 at about 12:45 A.M., plaintiffs' decedents were killed when the automobile in which they were riding was struck by a Chicago, Milwaukee, St. Paul and Pacific Railroad Company train operating on tracks owned by Chicago, Rock Island and Pacific Railroad Company. Neither a stop sign on the highway nor any railroad signaling device marked the crossing.
Plaintiffs sued both railroads. The Chicago, Milwaukee, St. Paul and Pacific Railroad Company cross-petitioned against Scott County for indemnity or contribution. This cross-petition alleged the cross was "a particularly dangerous highway grade crossing," and the county knew, or should have known, it constituted a hazard. It alleged the county was negligent "in failing to erect a stop sign at this crossing," citing § 321.342, The Code, 1971.
At the time of the collision this statute provided:
"321.342. Stop at certain railroad crossings. The state highway commission with reference to primary highways and local authorities with reference to other highways under their jurisdiction are each hereby authorized to designate particularly dangerous highway grade crossings of railroads and to erect stop signs thereat. When such stop signs are erected the driver of any vehicle shall stop within fifty feet but not less than ten feet from the nearest track of such grade crossing and shall proceed only upon exercising due care."
Scott County filed a motion to dismiss the cross-petition on the ground, inter alia, the claim "is exempted under * * * Iowa Code Section 613A.4(3)." Trial court overruled this motion, but on motion to reconsider withdrew the prior ruling, gave cross-petitioner thirty days to amend its cross-petition "to affirmatively allege some negligent act on the part of Scott County, Iowa," and ruled if the cross-petition was not so amended it would be dismissed "for failure to state a cause of action." When the amendment was not filed within the thirty day period, trial court dismissed the cross-petition.
The cross-petitioner railroad asserts Scott County was under a mandatory duty to place a stop sign at this crossing by virtue of § 321.342, supra, and in any event the petition alleged a situation which, if true, would generate a jury question whether the county was exercising due care in failing to do so.
The county argues the word "authorized" indicates the placing of such a sign is discretionary and not mandatory. Therefore, "no duty exists and the suit should be dismissed as per Seiber v. State, supra [211 N.W.2d 698 (Iowa 1973)]."
I. Under a motion to dismiss, the question is whether "it appears to a certainty a plaintiff would not be entitled to relief under any state of facts which could be proved in support of the claims asserted by him." Bindel v. Iowa Manufacturing Co. of Cedar Rapids, 197 N.W.2d 552, 555 (Iowa 1972); *264 see In re Estate of Klages, 209 N.W.2d 110, 113 (Iowa 1973).
Overruling or sustaining a motion to dismiss does not depend upon trial court's discretion. It must rest on legal grounds and is subject to review by this court. Board of Supervisors v. Standard Appliance Co., 249 Iowa 438, 440, 87 N.W.2d 459, 461 (1958). Our review is limited, however; we cannot sustain such a motion on grounds not asserted in trial court. Rick v. Boegel, 205 N.W.2d 713, 716 (Iowa 1973) and citations.
II. In its motion to dismiss Scott County relies on § 613A.4, The Code, 1971:
"613A.4 Claims exempted. The liability imposed by section 613A.2 shall have no application to any claim enumerated in this section.
* * * * * *
(3) Any claim based upon an act or omission of an officer or employee, exercising due care, in the execution of a statute, ordinance, or officially adopted resolution, rule, or regulation of a governing body."
However, in its brief filed here, the county does not rely on this section, but as above noted, asserts the county's sign-placing function was discretionary and the dismissal was a proper disposition under Seiber v. State, supra. In Seiber four justices of this court affirmed a summary judgment against a plaintiff whose decedent was killed in a car-deer collision in an unposted deer-crossing area. Two justices dissented. Three others concurred specially on the basis the papers filed did not raise essential issues, but nonetheless observed, 211 N.W.2d at 701, "If due care requires a warning, the State cannot avoid liability on the basis of a discretionary function. Stanley v. State, 197 N.W.2d 599 (Iowa)."
But more important, here, the county fails to observe Seiber was grounded on § 25A.14(1), The Code, which carved out an exemption from liability for the State for claims "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a state agency or an employee of the state * * *." No such "discretionary function" exemption is found in chapter 613A, "Tort Liability of Governmental Subdivisions."
Similarly overlooked by the county is the fact § 613A.2, The Code, 1971 simply provides "every municipality is subject to liability for its torts and those of its officers, employees, and agents acting within the scope of their employment or duties * * *." Any common-law immunity in tort previously accorded governmental subdivisions was eliminated except for those torts specifically excluded by § 613A.4. Jahnke v. Incorporated City of Des Moines, 191 N.W.2d 780, 782 (Iowa 1971). The definition of tort was given its widest range, meaning "every civil wrong * * * and includes but is not restricted to actions based upon negligence, breach of duty, and nuisance." Section 613A.1(3).
No one contends the legislature intended anything other than making more specific its original intention when in 1974 it expanded the definition to state a chapter 613A tort "includes but is not restricted to actions based upon negligence; error or omission; nuisance; breach of duty, whether statutory or other duty or denial or impairment of any right under any constitutional provision, statute, or rule of law." (Emphasis supplied.) Acts 65 G.A., Ch. 1263 § 2.
Thus the obligation of the county to these plaintiffs is not required to be specifically mandated by a statute, nor is its potential liability grounded upon an overt act rather than omission. The abrogation of governmental immunity in these situations requires the application of a basic tort rule:
"We have always recognized the rule that negligence may be predicated upon a statute violation or upon the common law rule of `ordinary care under the circumstances.' It may be based upon acts of commission or of omission."
Lindquist v. Des Moines Union Ry. Co., 239 Iowa 356, 360, 30 N.W.2d 120, 122 (1947).
*265 We have consistently recognized that governmental units, with respect to highways or streets within their jurisdictions, have a responsibility to the traveling public. Ehlinger v. State, 237 N.W.2d 784, 788-789 (Iowa 1976); Anderson v. Lyon County, 206 N.W.2d 719, 721-722 (Iowa 1973); Stanley v. State, 197 N.W.2d 599, 602-604 (Iowa 1972).
Applying the law as it existed prior to enactment of chapter 613A, we held a city's liability in tort arose because authority and control over a particular activity had been delegated to it. Lindstrom v. Mason City, 256 Iowa 83, 91, 126 N.W.2d 292, 296 (1964); cf. Bauman v. City of Waverly, 164 N.W.2d 840, 847 (Iowa 1969). We applied the same rule with respect to a county's obligation to maintain bridges until we extended it the State's immunity cloak in Post v. Davis County, 196 Iowa 183, 191 N.W. 129 (1923). Since abrogation of immunity in chapter 613A the same concept should apply to counties.
Scott County had jurisdiction of this secondary road, § 306.4, The Code, 1971. It was authorized to place traffic control devices upon the road to warn traffic, § 321.255, The Code, 1971, including a stop sign at a particularly dangerous railroad crossing, § 321.342, The Code, 1971. This jurisdiction and authority, under long-standing case law, supra, affords a basis for imposing an affirmative obligation to act where due care would require it. See Conrad v. Board of Supervisors of Lee County, 199 N.W.2d 139, 144 (Iowa 1972) ("The trial court should have instructed the jury in terms of the obligation resting on the county to exercise due care in the performance of its functions rather than in terms of a statute on maintenance of roads.")
In reviewing trial court's dismissal ruling we assume this crossing was, as alleged, a particularly dangerous crossing. We assume as a fact Scott County knew or should have known it constituted a hazard. See Iowa Truck Center, Inc. v. Davis, 204 N.W.2d 630, 631 (Iowa 1973). No railroad signaling device was in place. To hold under these circumstances, as a matter of law, the county should be immune from liability for failing to post a stop sign in a situation clearly entailing foreseeable harm or damage to persons traveling on its secondary road would be against logic, sound reason, and enlightened public policy. See Wittrup v. Chicago & Northwestern Ry. Co., 226 N.W.2d 822, 824 (Iowa 1975). "Ordinary care under the circumstances," Lindquist, supra, as determined by a jury, might well require the county to take affirmative action to warn of the hazard as statutorily authorized with respect to "particularly dangerous" crossings.
III. Scott County argues § 478.1, The Code, 1971, imposes on the railroad the duty to warn "with only a statutory discretionary right on the part of the county to augment said warning." We cannot agree a county's statutory obligation to warn of a hazard created by a particularly dangerous crossing is only discretionary because of the statutory obligation of the railroad to post warning signs.
We had the reverse situation in Maier v. Illinois Central Railroad Company, 234 N.W.2d 388 (Iowa 1975) where a stop sign was positioned in front of a "crossbuck" warning sign. The jury, finding for the plaintiff in a car-train collision, necessarily found the crossing was more than ordinarily dangerous, requiring additional warning devices. Defendant railroad in Maier was unsuccessful in its contention the stop sign obviated any further duty to place additional warning devices.
We hold both the railroad and the county may have an obligation with respect to a particularly hazardous crossing. See Illinois Central Railroad Company v. Farris, 259 F.2d 445, 448-449 (5 Cir. 1958):
"But it does not follow that the Illinois Central, which constructed the crossing, and is obligated to conduct its operations with due care to the public, is free from responsibility because of Panola County's duty to maintain roads and post signs. Both parties owe a duty to the travelling public, and the protection [governmental immunity] afforded one joint tort feasor *266 does not affect the liability of the other joint tort feasor."
See also Crockett v. City of Mexico, 336 Mo. 145, 152, 77 S.W.2d 464, 466 (1934).
We reverse trial court's ruling dismissing the railroad's cross-petition, and remand this case for further proceedings consistent herewith.
REVERSED AND REMANDED.