Jack W. PATTON and Marjorie H. Tillman, Plaintiffs,

v.

UNITED STATES of America, Defendant and Third-Party Plaintiff,

v.

GENERAL MOTORS CORPORATION and Michael Ray Adams, Third-Party Defendants.

Civ. A. No. 79–3267–CV–S–2.

United States District Court, W.D. Missouri, S.D.

June 24, 1982.

William H. McDonald, Springfield, Mo., for plaintiffs.

Eugene Harrison, Asst. U.S. Atty., Kansas City, Mo., for defendant.

Turner, Reid, Duncan & Loomer, Kenneth Reid & Rodney Loomer, Springfield, Mo., for General Motors Corp.

Woolsey, Fisher, Whiteaker, McDonald & Ansley, William McDonald, Virginia Fry, Springfield, Mo., for Michael Ray Adams.

## MEMORANDUM OPINION AND ORDER

COLLINSON, Senior District Judge.

This is an action for damages for the wrongful death of a seventeen year old boy, Steven Lee Patton, brought by his divorced parents against the United States of America. Steven died in a tragic one-car accident which occurred on a government owned and operated recreation area adjoining Stockton Reservoir in Cedar County, Missouri. Plaintiffs allege negligent design, construction and maintenance of the road upon which the accident happened, a road constructed and maintained by the United States of America for the use of the public visiting this recreation area.

The deceased and three other teenaged boys were in a 1972 Oldsmobile driven by Michael Ray Adams. Jim Adams was seated in the middle and Steven Patton was on the right side of the front seat. The third Adams boy was riding in the back seat. All of the boys lived in the area, and the driver had driven the road upon which the accident occurred on previous occasions and was familiar with the road and with the curve upon which this accident occurred.

The recreation area is bounded on the west by county Highway "H," and on the north by the lake itself. The accident occurred about 11:00 p.m., and there was no form of lighting on the road. The car was driven off "H" Highway onto a government road designated "R.B.4." At the point the car left Highway H, it entered upon the government reservation. There was a sign at that point stating this fact and also stating the speed limit. There is a dispute in the evidence whether the stated speed limit on the night of the accident was 20 miles per hour or 25 miles per hour, but undoubtedly one or the other was posted. After proceeding east a short distance, the car turned north on a road designated "R.B.5" or the beach road. This road went down a long hill and directly north to the lake where it made a sharp turn to the east. At this curve there was a blacktop parking lot on the west side, a children's playground on the east side, and two restrooms almost directly ahead of the line of the northbound road just beyond the curve. The highway had a "chip and seal" or blacktop surface twenty feet wide with two-foot gravel shoulders. The curve had no "super-eleva-

tion" or banking and all witnesses agreed that twenty-five miles an hour was the approximate maximum speed at which it could be negotiated.

The accident occurred on this curve. The northbound car, as it reached the curve, slid sideways in a northwest direction from the right lane across the road off the left side and continued to slide until it flipped over. The car ended on its top with the greatest damage to the roof on the righthand side directly behind the windshield. The roof on that side was crushed in so far that it penned Steven's head between the headrest and the top, causing his death.

Some ten feet west of the left side of the highway, on the curve, the government had constructed a small, level concrete pad to hold two trash buckets. This pad extended about four inches above the ground and had a small diameter iron rod imbedded in it, about three feet high. After the accident, the rod was found to be bent in the direction the car was skidding before it flipped over. It is plaintiffs' theory that the left rear tire of the car, skidding sideways, struck the pad and this caused the car to flip. There is no direct evidence that this occurred and the highway patrolman who investigated the accident that night and who examined the skid marks, stated that in his opinion the car skidded sideways across the gravel shoulder and then into a grassy plot north of the parking lot where its wheels dug into the grass, which caused it to roll.

The driver of the car testified that as he approached the curve there were two cars parked in the curve, halfway into the roadway, and that the blacktop was completely covered with gravel so that when he applied his brakes the rear end of the car started going around to the left and the car skidded completely off the road and flipped over. He blamed the accident on "excessive" gravel on the roadway, the parked cars and "thought" probably the left rear wheel struck the concrete pad, causing the car to flip. One of his brothers confirmed the theory of excess gravel on the roadway and also testified that before the car flipped, he

heard it bang something in the rear which he thought must have been the concrete pad.

■ Plaintiffs' first contention is that the design of the road was negligent. This is answered by the government by a claim that negligent design comes under the exception contained in § 2680(a) of Title 28, United States Code. This Section provides in part that the government is not liable under the Federal Tort Claims Act for "any claim ... based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the government, whether or not the discretion involved be abused." The leading case interpreting this provision is *Dalehite v. United States,* 346 U.S. 15, 73 S.Ct. 956, 97 L.Ed. 1427 (1954), which arose out of the famous Texas City disaster. In that case the Supreme Court held that discretion includes "determinations made by executives or administrators in establishing plans, specifications or schedule of operations. Where there is room for policy judgment and decision, there is discretion." In the case of *Firemen's Fund Amer. Ins. v. United States,* 482 F.Supp. 893 (D.Ore.1979), the Court directly held that the draft of plans and specifications of a road by the Forest Service was a discretionary function where there could be no liability under the Federal Tort Claims Act. This Court finds the design of this road by the Corps of Engineers was a discretionary function. The Corps could have designed a seventy-miles per hour divided highway with banked curves, but instead exercised its discretion to design a twenty-miles per hour highway through this recreational, playground and camping area and the claim of negligence in this regard is barred by the provisions of § 2680(a). In addition, the Court finds that plaintiffs' evidence failed to establish that there was any negligence in the design of this road if the United States was not absolved by reason of § 2680(a).

The second contention of the plaintiffs is negligence in the construction of the road. The principal contention in this regard was

that the concrete pad for the trash cans was constructed in a negligent manner in that it was too close to the traveled portion of the highway, on a curve, and that it was foreseeable that a car might skid off the highway, strike the pad and overturn. This Court finds that the car in which the deceased was riding did not strike the concrete pad as evidenced by the State Trooper's testimony of the location of the skid marks. Furthermore, the Court finds that there was no negligence in the location of the trash container paid some six to eight feet off the highway which was posted with a twenty-miles per hour speed limit and a ten-miles per hour speed limit at the particular place of the accident.

The third contention of the plaintiffs is that the Corps of Engineers was negligent in the maintenance of this road. This contention is based, first on the existence of an excess amount of gravel on the blacktop surface. This was the contention of the driver of the car, after the accident, and after he had pled guilty to careless and imprudent driving after the accident. It is only natural for the driver to attempt to shift responsibility for the death of his friend to some agency beyond his control. The overwhelming evidence in this case from impartial witnesses was that there was no excessive gravel on the roadway which contributed to the accident and the Court finds this contention against the plaintiffs. The Court might add parenthetically that even if the driver's testimony was taken at full value, that there was still no evidence that the excess gravel had been on the road surface long enough for the Corps to learn of it and have it removed.

The fourth contention of plaintiffs is that on the night of the accident there was no warning sign of the curve. Since the driver testified that he had been over the road many times and was familiar with the curves, it is difficult to see how the absence of a warning sign could have been the proximate cause of the accident. However, again all the testimony of impartial witnesses is that the warning sign stating that the lake was ahead and posting a ten-miles per hour speed limit was in position on the night of the accident and the Court so finds.

One most credible witness was present in the playground with his four-years old daughter at the time of the accident and testified definitely that there were no cars parked on the curve at that time. The experienced State Trooper who investigated the accident measured the skid marks and testified that they started near the right-hand side of the blacktop, before the car entered the curve and that the car skidded to the left a distance of 141 feet. Due to his experience in investigating a large number of accidents, he was allowed to express his opinion which was that the car had been traveling 45 to 50 miles per hour when the brakes were applied. An expert witness on determining speed from skid marks testified that the car was traveling 47.44 miles per hour at the time the brakes were applied.

■ It is obvious from all the testimony in this case that the excessive speed of the car was the cause of this accident and that there was no negligence on the part of the government in the design, construction or maintenance of the highway upon which the accident occurred, which was the proximate cause of this occurrence. It is therefore

ORDERED that the Clerk enter judgment in favor of the defendant herein and against the plaintiffs, at plaintiffs' costs.