Nancy Jean METIER, Appellant,

v.

COOPER TRANSPORT CO., INC., and Jerry Lee White, Defendants,

State of Iowa, Appellee.

No. 85–257.

Supreme Court of Iowa.

Dec. 18, 1985.

C. Joseph Coleman, Jr. of Mitchell, Coleman, Perkins & Enke, P.C., Fort Dodge, for appellant.

Thomas J. Miller, Atty. Gen., and Robin G. Formaker, Asst. Atty. Gen., for appellee.

Considered by REYNOLDSON, C.J., and McCORMICK, McGIVERIN, LARSON, and SCHULTZ, JJ.

REYNOLDSON, Chief Justice.

Plaintiff Nancy Jean Metier has appealed from a district court ruling dismissing her claim against the defendant, State of Iowa. Our review requires us to examine statutory and case law relating to governmental immunity, including the "discretionary function" exception to the State Tort Claims Act, a governmental exception to the Comparative Fault Act, and the liability of the State with respect to its protected deer herds. We affirm and remand for further proceedings in the claims against other defendants in the litigation.

November 1, 1983, the auto that plaintiff was driving came into collision with a truck owned by defendant Jack Cooper Transport Co., Inc., and driven by defendant Jerry Lee White. February 10, 1984, plaintiff filed an action against those defendants in Hamilton County, where the collision occurred.

September 25, 1984, plaintiff amended her petition to bring the State in as a defendant and to assert a separate claim against it. In this amendment and other amendments that followed, plaintiff alleged both vehicles were traveling northward on Iowa Highway 17 about three miles south of Webster City, Iowa, she was forced to swerve from her path of travel to avoid striking deer on the highway, and her vehicle was struck by the truck.

Plaintiff further alleged "[t]he area in which the accident occurred is, and has been for some time in the past, a crossing place for deer"; there had been numerous accidents involving deer in the area where plaintiff was injured; and the State knew or should have known the area was a deer crossing place and a hazard to motorists. Plaintiff asserted the State proximately and negligently caused her injuries and damages by failing to recognize an established deer crossing, failing to erect and maintain warning devices at the point where deer crossed the highway, and fail-

ing to warn motorists "in any manner of the dangerous circumstances involved at the deer crossing." In separate counts plaintiff alleged the State was liable as owner of the deer.

The State responded with a special appearance, asserting the court lacked subject matter jurisdiction because the State was immune from suit under the Iowa Code subsection 25A.14(1) discretionary function exception. It also filed a motion to dismiss and a motion to strike, directed against the four counts in plaintiff's claim against the State.

Trial court granted the motion to dismiss. It rejected the State's argument that under our case law the posting of a deer crossing sign was a discretionary function. The court was convinced, however, that the State, in these circumstances, had an Iowa Code subsection 668.10(1) exemption from fault for failing to post a warning sign at the crossing. Finally, trial court rejected the concept that the State, as owner of the deer, had the same liability as an individual owner of animals might have in similar circumstances.

Plaintiff's appeal thus raises three issues:

1. Did the court have subject matter jurisdiction to reach the merits presented by this case?

2. Does a deer crossing sign constitute a "traffic control device" within the meaning of Iowa Code subsection 668.10(1) so that the State cannot be held at fault for failure to erect such signs?

3. Does the State's control or supervision over the deer population provide a separate basis for imposing liability for plaintiff's personal injuries and property damage?

We address these issues in the divisions that follow.

## I. *Jurisdiction.*

■ The State asserts the decision whether to erect a deer crossing sign is a discretionary function falling within an exception to the State Tort Claims Act. Section 25A.14 of that Act states:

The provisions of this chapter *shall not apply* with respect to any claim against the state, *to:*

1. Any claim based upon an act or omission of an employee of the state, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or *the failure to exercise or perform a discretionary function or duty on the part of a state agency or an employee of the state, whether or not the discretion be abused.*

Iowa Code § 25A.14(1) (1983) (emphasis added). Thus, the State argues this case must be dismissed for lack of subject matter jurisdiction because plaintiff's claim falls within an enumerated exception to tort liability imposed on the State. *See Lloyd v. State,* 251 N.W.2d 551, 556–57 (Iowa 1977). We need not decide here whether the *Lloyd* rule has continued viability, because in this case we find the exception is not applicable.

The State claims support for its contention in *Seiber v. State,* 211 N.W.2d 698 (Iowa 1973), a case in which three justices found "[t]he policy determination of the State Highway Commission not to post 'deer crossing' signs on the highways of this State most certainly involves the exercise of discretion." *Id.* at 700. Three other justices specially concurred on "the ground that the papers in this particular case do not state facts or circumstances from which a jury could reasonably find that due care required a warning," but observed that "[i]f due care requires a warning, the State cannot avoid liability on the basis of a discretionary function," citing *Stanley v. State,* 197 N.W.2d 599, 603 (Iowa 1972). Two justices dissented; one took no part.

*Seiber* was before the district court on the State's motion for summary judgment, thus the "papers" supporting plaintiff's resistance were critical, as the specially concurring justices noted. In this case the

jurisdictional issue arises on a special appearance limited to the ground that "placement of deer crossing signs ... falls purely within the discretion of the State of Iowa and its agencies." Therefore, the allegations of the petition that go to the merits of plaintiff's claim are taken as true and are not subject to contradiction when considering the legal issue raised by the special appearance. *See Martin v. Ju-Li Corp.*, 332 N.W.2d 871, 873 (Iowa 1983); *E & M Machine Tool Corp. v. Continental Machine Products, Inc.*, 316 N.W.2d 900, 904 (Iowa 1982).

In resolving the jurisdictional issue, we therefore accept as established that the proximate cause of the collision was deer on the highway in an area the State knew or should have known was a crossing place for deer, at which there had been numerous accidents involving such animals. We also accept as established that the area was devoid of warning signs that would alert the public to this hazard. It is clear the posture of this case is far different from that presented in the *Seiber* summary judgment motion.

Nor is there any further question the State has made a decision to place warning signs at highway deer crossings. The Uniform Manual for Traffic Control Devices (Uniform Manual), adopted by the Department of Transportation pursuant to Iowa Code section 321.252 (1983), illustrates and provides specifications for deer crossing warning signs. *See Menzel v. Morse*, 362 N.W.2d 465, 472 n.5 (Iowa 1985) ("We may judicially note [the] manual as a public document issued by a state agency.").

The specially concurring justices in *Seiber*, who relied on *Stanley v. State*, 197 N.W.2d 599, must have found the following language from that decision persuasive:

> Undoubtedly there are hard cases where planning and operation overlap, but this is not one of them. The decision to keep highway 175 open during construction was one within the proper discretionary function for which no liability would attach; but once that decision was made, negligence in carrying out that

policy cannot be excused on the ground the negligent acts were performed in the exercise of discretion within the meaning of the statutory exemption.

> Every act involves discretion. However, the decision not to give proper warning is no more a "discretionary function" as defined in section 25A.14(1) than is the determination to drive a state-owned vehicle in excess of the speed limit.

*Id.* at 603.

Other decisions since *Seiber* further illuminate the applicable principles. We explored the discretionary function exception again in *Butler v. State*, 336 N.W.2d 416 (Iowa 1983). There, applying the planning-operational dichotomy, we held the State's decision not to upgrade its guardrails on Interstate 80 was not a planning stage decision but an operational decision that made the discretionary function exception inoperable:

> Policy decisions, such as when and where to construct a freeway, involve the weighing of the merits of social, political and economic factors traditionally held to be within the purview of the legislature. Judicial review of such decisions would be an apparent violation of the separation of powers principle. *Blessing v. United States*, 447 F.Supp. 1160, 1180 (E.D.Pa.1978) (federal discretionary function exception statutorily embodies separation of powers principle). Decisions made at the operational level, however, do not involve the same overriding policy determinations and can readily be reviewed under judicially manageable tort standards of due care and reasonableness. *Id.* at 1185.

In the present case we must evaluate the Department of Transportation (DOT) decisions on which plaintiffs base their negligence claims. The first are decisions made concerning the design and placement of the guardrail. The second are decisions made over the course of the years not to update the guardrail. We conclude that these decisions were made at the operational level. Such decisions

were necessary to implement the policy decisions to construct I–80 and are to be judged according to the State's duty to use due care to make the freeway reasonably safe for the traveling public. *Lewis* [*v. State* ], 256 N.W.2d [181,] 195 [Iowa 1977]; *cf. Driscoll v. United States*, 525 F.2d 136 (9th Cir.1975) (having undertaken to provide traffic control devices on air base, decision not to install certain devices in area of accident was operational); *Foster v. United States*, 183 F.Supp. 524 (D.N.M.1959), *aff'd*, 280 F.2d 431 (1960) (failure to place guardrails on bridge over canal and failure to repair fencing along canal not within discretionary function exception); *Baldwin v. State*, 6 Cal.3d 424, 99 Cal.Rptr. 145, 491 P.2d 1121 (1972) (discretionary function exception not applicable to failure to upgrade intersection known to be hazardous) . . . .

*Butler*, 336 N.W.2d at 419–20. *See Hansen v. City of Audubon*, 378 N.W.2d 903, 906 (Iowa 1985) (City was not entitled to immunity on the basis it was performing a "discretionary function" in failing to repair or properly maintain a known defective sewer system.); *Malloy v. Guthrie County*, 368 N.W.2d 121, 123–24 (Iowa 1985) (Iowa Code section 321.255 direction that local authorities shall erect signs "as they deem necessary" does not give them absolute discretion regarding signs, the decision "is subject to the pervasive requirement of ordinary care under the circumstances.").

We hold the case before us falls squarely within the holdings of *Butler* and *Stanley*. We may assume, without deciding, that the initial decision to place warning signs at deer crossing sites on the State's highways was a planning and not an operational decision. It nonetheless is plain the failure to carry out that policy by placing such signs at this particular crossing was operational in character. The failure was not an implementation of a discretionary function. It follows the State had no immunity from suit under Iowa Code subsection 25A.14(1). Trial court properly concluded it had subject matter jurisdiction and did not err in overruling the State's special appearance.

II. *Applicability of Iowa Code Subsection 668.10(1).*

The State's amended motion to dismiss and to strike generally asserted plaintiff had failed to state a claim upon which any relief could be granted, and specifically relied on Iowa Code subsections 25A.14(1) (discussed in the first division), and 668.-10(1). In this division we address the interpretation and application of the latter subsection.

In our review of trial court's ruling on a motion to dismiss we again accept plaintiff's factual allegations:

A motion to dismiss is sustainable only when it appears to a certainty the pleader has failed to state a claim upon which any relief may be granted under any state of facts provable under the allegations. The motion admits the allegations and waives any ambiguity or uncertainty in the pleading. The allegations are construed in their light most favorable to the pleader, and doubts are resolved in [the pleader's] favor.

The motion cannot be based upon facts not alleged in the pleading which is assailed, unless judicial notice can be taken of additional facts.

*Hoefer v. Sioux City Community School District*, 375 N.W.2d 222, 223 (Iowa 1985) (*quoting Curtis v. Board of Supervisors*, 270 N.W.2d 447, 448 (Iowa 1978) (citations omitted)).

Accepting plaintiff's factual allegations, however, does not resolve the issues raised by the statute the State relies on.

Chapter 1293 of the 1984 session laws created the Comparative Fault Act, *see* 1984 Acts ch. 1293. It has been codified as chapter 668 in the 1985 Code. Because plaintiff's claims against the State were filed after the effective date of chapter 668 (July 1, 1984), the provisions of that Act apply. *See* 1984 Acts ch. 1293, § 15; *Rees v. Dallas County*, 372 N.W.2d 503, 504 (Iowa 1985).

Section 668.10 is entitled "Governmental Exemptions": and states in part:

In any action brought pursuant to this chapter, the state or a municipality shall not be assigned a percentage of fault for any of the following:

1. The failure to place, erect, or install a stop sign, traffic control device, or other regulatory sign as defined in the uniform manual for traffic control devices adopted pursuant to section 321.-252. However, once a regulatory device has been placed, created or installed, the state or municipality may be assigned a percentage of fault for its failure to maintain the device.

The State argues the deer crossing sign is a "traffic control device" within the meaning of the statute and therefore no fault can be attributed to it with respect to plaintiff's collision and damages.

Plaintiff responds that "traffic control device," as it appears in the above statute, is limited by the more specific category, "other regulatory sign," which follows in the same sentence. The next full line in subsection 668.10(1) refers to "regulatory device." These words, according to plaintiff, support her interpretation that the legislature intended "traffic control devices" be limited to the class of "regulatory signs," as defined in the Uniform Manual. Thus, plaintiff contends we must refer to the Uniform Manual to determine whether a deer crossing sign is within the exemptions stated in subsection 668.10(1). The Uniform Manual includes a deer crossing sign within the "warning sign" category as distinct from the "regulatory sign" category that is mentioned in the statute. *See Uniform Manual* § 2C–31, illustration W11–3 (1978). Consequently, plaintiff concludes subsection 668.10(1) is no bar to imposition of fault against the State.

To resolve this ambiguity, we resort to statutory construction. *In re Marriage of Cernetisch*, 376 N.W.2d 598, 599 (Iowa 1985); *State v. Schlemme*, 301 N.W.2d 721, 723 (Iowa 1981). We follow several general principles of statutory construction.

We may consider the language used in the statute, the objects sought to be accomplished, the evils and mischief sought to be remedied, and place a reasonable construction on the statute which will best effectuate its purpose rather than one which will defeat it. We must examine both the language used and the purpose for which the legislation was enacted and consider all parts together without giving undue importance to one single or isolated portion.

*Schlemme*, 301 N.W.2d at 723 (citation omitted); *see also Emmetsburg Ready Mix Co. v. Norris*, 362 N.W.2d 498, 499 (Iowa 1985) (A practical and workable construction should be given to the statute.); Iowa Code § 4.6 (1983). Moreover, statutes dealing with the same subject matter are considered together. Such acts must be harmonized in light of their common purpose. *Messina v. Iowa Department of Job Service*, 341 N.W.2d 52, 56 (Iowa 1983); *State v. Rich*, 305 N.W.2d 739, 745 (Iowa 1981).

Plaintiff argues we should apply the doctrine of *ejusdem generis:* specific words following more general words restrict "application of the general term[s] to things that are similar to those enumerated." 2A N.J. Singer, *Sutherland Statutory Construction* § 47.17 (4th ed. 1984). The doctrine is applied to avoid making any terms superfluous, for "[i]f the general words are given their full and natural meaning, they would include the objects designated by the specific words." *Id.* The doctrine often is used to construe penal statutes and is inapplicable when no inconsistency exists between the general and specific language. *Id.*

In construing a statute, no one doctrine or principle of construction is necessarily determinative. *See Wright v. State Board of Engineering Examiners*, 250 N.W.2d 412, 414 (Iowa 1977). A statute under scrutiny must be harmonized with related statutes to obtain a practical and workable meaning. In this case the doctrine of *ejusdem generis* is not controlling in our search for the legislative intent. Throughout chapter 321 of the Iowa Code, the legislature has indicated a traffic control device means a device that warns, guides, or regulates traffic. *See, e.g.,* Iowa Code

§§ 321.252–.256, .259 (1983). Moreover, the code specifically defines the term to include "all signs, signals, markings, and devices not inconsistent with this chapter placed or erected by authority of a public body or official having jurisdiction, for the purpose of regulating, warning, or guiding traffic." Iowa Code § 321.1(62) (1983). Thus, to limit the definition of traffic control device as plaintiff suggests injects a basic inconsistency in its pervasive use in chapter 321. Nothing in the legislature's prior use of this term suggests it intended to restrict its meaning in subsection 668.-10(1).

Nor is the applicability of the *ejusdem generis* doctrine supported by the legislature's listing of a series of terms separated by commas in Iowa Code subsection 668.-10(1). The legislature specifically listed stop signs, traffic control devices, and other regulatory signs. If it intended that only regulatory signs be included in the exemption, there was no reason to mention the other terms. The Uniform Manual includes stop signs in the regulatory sign category; yet the legislature listed stop signs as a term separate from "other regulatory signs." We can only conclude the legislature must have intended each term to have its own significance.

In addition we note the language of Iowa Code subsection 668.10(1) that states: "other regulatory sign as defined in the uniform manual for traffic control devices." In our view, "uniform manual for traffic control devices" modifies or limits only "other regulatory sign," and does not restrict the other terms in the series, including "traffic control devices." *See State v. Lohr*, 266 N.W.2d 1, 3 (Iowa 1978) ("Normally, however, referential, relative, or qualifying words and phrases refer only to the immediately preceding antecedent.").

We also think it significant that the Uniform Manual itself recognizes the broad definition of traffic control devices.

The purpose of *traffic control devices* and warrants for their use is to help insure highway safety by providing for the orderly and predictable movement of all traffic, motorized and non-motorized, throughout the national highway transportation system, and to provide such *guidance* and *warnings* as are needed to insure the safe and informed operation of individual elements of the traffic stream.

Traffic control devices are used to direct and assist vehicle operators in the guidance and navigation tasks required to traverse safely any facility open to public travel.

*Uniform Manual* § 1A–1 (1978) (emphasis added). If "traffic control devices" include signs that "warn" or "guide," then it seems plain that deer crossing signs are a form of traffic control device, and the State cannot be assigned fault for failing to post such a sign by reason of the exemption created by Iowa Code subsection 668.10(1).

■ Finally, we are persuaded by application of our case law principles that a legislative enactment presumes a reasonable result is intended, *DeMore v. Dieters*, 334 N.W.2d 734, 737 (Iowa 1983), and our interpretation should avoid impractical or absurd results. · *Welp v. Iowa Department of Revenue*, 333 N.W.2d 481, 483 (Iowa 1983). Plaintiff's interpretation of Iowa Code subsection 668.10(1) would permit the State to escape assignment of fault for failing to post a stop sign at the intersection of two busy highways, but not if it failed to post a warning sign at a rural deer crossing site. Obviously, such an interpretation leads to an unreasonable result and would be anomalous, if not absurd. It also may be anomalous, of course, to insulate the State from liability for not posting a warning sign at a known place of danger while permitted fault to be assigned to it for failing to maintain an already-posted warning sign where there may be little risk to motorists. Those are legislative policy decisions, however, over which, in the separation of governmental powers, we have no control. Overall, Iowa Code section 668.10 can only be viewed as a continuation of a discernible current trend to make individual citizens bear the sole burden of the negligence of State employees.

We hold trial court did not err in holding the Iowa Code subsection 668.10(1) exemption from fault applied to the State's failure to post a deer crossing sign at the location of this collision.

### III. *State Ownership as a Basis of Liability.*

Plaintiff's petition alleged, as a separate basis for liability, the State's title, ownership, and control of its deer herds. Plaintiff argues the State should be liable for the damage caused by such animals, just as a private owner would be liable. *See Weber v. Madison*, 251 N.W.2d 523, 528–29 (Iowa 1977).

As a premise, plaintiff starts with Iowa Code section 109.2, which in relevant part provides:

> The title and ownership of all ... wild game, animals, and birds ... found in the state ... are hereby declared to be in the state ....

From that point plaintiff reviews the numerous statutes by which, she asserts, Iowa exercises complete control over its deer. *See, e.g.,* Iowa Code §§ 109.22 (clothing that must be worn while hunting deer); 109.23 (transportation of kill); 109.32 (criminal penalties for violating statutes or administrative rules); 109.55 (disposition of hide); 109.57 (possession of carcass); 109.-130 (civil penalty of $750 for unlawfully taking deer).

Plaintiff argues the State exercises greater ownership rights over its deer than Iowa's cattle or hog farmers can possibly exercise over their livestock. The State, plaintiff argues, should therefore be exposed to the same liability for damages caused by its animals, in this case, deer. Trial court erred, according to the plaintiff, in finding the State exercised "small control" over its deer and in holding it was not liable as an owner in this situation.

We are unconvinced that the State's interest in the wild animals of this jurisdiction can be equated with a farmer's interest in his livestock. Plaintiff apparently could find no authority to support her position that the State might be liable on the basis of a proprietary interest in its deer herds.

The State's interest more accurately is characterized as an ownership or title in trust, to conserve natural resources for the benefit of all Iowans. *See New Mexico State Game Commission v. Udall*, 410 F.2d 1197, 1200 (10th Cir.) ("[I]nsofar as wild animals within a state are capable of ownership, they are owned by the state in its sovereign capacity for the benefit of its people, with the resulting right to regulate the taking thereof."), *cert. denied*, 396 U.S. 961, 90 S.Ct. 429, 24 L.Ed.2d 426 (1969). The United States Supreme Court, in its commerce clause analysis, has termed actual State ownership a legal fiction, but nevertheless has recognized the substantial interest of the State, on behalf of its citizens, in conserving and protecting wild animals. *Hughes v. Oklahoma*, 441 U.S. 322, 337, 99 S.Ct. 1727, 1737, 60 L.Ed.2d 250, 262–63 (1979). To hold the State liable for all the conduct of its wild animals in every situation would pose intractable problems, and intolerable risks to the ultimate ability of the State to administer its trust. The heritage of wildlife beauty and splendor the State seeks to preserve for future generations might well be lost.

We hold trial court did not err in sustaining the motion to dismiss. The district court ruling on this facet of the case is affirmed, and the case remanded for further proceedings against the remaining defendants.

AFFIRMED AND REMANDED.