**Dianna Jo SAUNDERS, by her Father and Next Friend, Edward H. SAUNDERS, Jr.; Edward H. Saunders, Jr.; and Patricia Saunders, Appellees,**

**v.**

**DALLAS COUNTY, Iowa, Appellant.**

**No. 86-1238.**

Supreme Court of Iowa.

March 16, 1988.

Carlton G. Salmons of Austin, Gaudineer, Austin, Salmons & Swanson, Des Moines, for appellant.

Rick L. Olson, Des Moines, for appellees.

Considered by McGIVERIN, C.J., and HARRIS, CARTER, NEUMAN and ANDREASEN, JJ.

HARRIS, Justice.

This personal injury claim against a county calls for an interpretation of Iowa Code section 668.10(1) (1985). The statute states that the state or a municipality will not be liable for the failure to place, erect, or install a traffic control device or other regulatory sign, but will be liable for the failure to maintain one already installed. The district court found that the statute did not immunize the county from liability. We granted permission for this interlocutory appeal to review that finding and now reverse.

The alleged negligence has to do with a curve sign on a county secondary road (Sammon Road) which enters Van Meter, Iowa, from the south. Sammon Road begins at a T intersection with an east-to-west county road to the south and connects traffic on that road with the town of Van Meter to the north. Traveling north toward Van Meter the road has two slight curves, first to the left, then (after a short distance) to the right. Sammon Road was blacktopped in 1977; prior to then it had a gravel surface. There is only one curve sign in question, a left reverse curve sign which serves as warning for both curves. It was placed prior to 1977 and remains unchanged. There are no speed signs in the area of either curve.

Iowa Code section 321.252 (1985) adopted the manual on uniform traffic control devices (MUTCD). Pursuant to the MUTCD, a reverse curve sign[1] is used to warn of two curves in opposite directions that are separated by a straight line (tangent) of less than 600 feet. The MUTCD requires that the reverse curve sign be placed 750 feet before the first curve. Thus the reverse curve sign must be positioned less than 1350 feet before the second curve.

This left reverse curve sign was placed 523 feet south of the point of curvature[2] of the first (southernmost) curve. A distance of 714 feet separates the point of tangency

1. A "curve" sign, as opposed to a "turn" sign, indicates that the recommended speed on the curve is in the range between 30 and 60 miles per hour. A "turn" sign means that the motorist should slow down to a speed of less than 30 miles per hour. MUTCD 2C–2, 3.

2. Point of curvature is the point where curvature first begins from a previously straight path. Point of tangency refers to the end of curvature where the path returns to a straight line.

of the first curve and the point of curvature of the second curve. Including the distance of the first curve, the left reverse curve sign was 1440 feet south of the point of curvature of the second curve. A "No Passing Zone" sign was approximately 127 feet north of the reverse curve sign, and a "Speed Zone Ahead" sign was placed just under 1000 feet north of the "No Passing Zone" sign. The following sketch of the road shows the placement of the signs in question.

---

On May 28, 1985, Brian Headlee was driving a motorcycle on which the plaintiff Dianna Jo Saunders was a passenger.

Traveling north on Sammon Road Headlee observed the left reverse curve sign and passed it going forty-five miles per hour. He maintained that speed through the first curve. He entered the second curve while still traveling forty-five miles per hour and lost control of his motorcycle. He veered into the southbound lane, onto the opposite shoulder, and drove into the west ditch. The plaintiff[3] was injured and is now a quadriplegic.

Plaintiff brought this suit for her personal injuries, alleging the county was negligent:

> (1) In the placement of a reverse curve sign at an inappropriate distance from the highway curve;
>
> (2) In the placement of only one reverse curve sign instead of two curve signs; and
>
> (3) In the failure to post one or more advisory speed plates.

The county's motion for partial summary judgment was addressed only to the foregoing specifications, those relating to the signs in the area. Other specifications of negligence are not at issue in this appeal.

Section 668.10 states in part:

> In any action brought pursuant to this chapter, the state or municipality shall not be assigned a percentage of fault for any of the following:
>
> 1. The failure to place, erect, or install a stop sign, traffic control device, or other regulatory sign as defined in the uniform manual for traffic control devices adopted pursuant to section 321.252. However, once a regulatory device has been placed, created or installed, the state or municipality may be assigned a percentage of fault for its failure to maintain the device.

In denying the motion, the trial court said:

> The claim concerning the positioning of a reverse curve sign an inappropriate distance from a highway curve is not barred by section 668.10 because a reasonable construction of the prohibition against an assignment of fault to a municipality for "failure to place, erect, or install ... traffic control devices ..." does not bar claims concerning the incorrect positioning of devices which have already been installed.

In the county's view incorrect positioning of a sign is nothing other than a "failure to place, erect, or install, that sign a correct distance from the curve and, under the statute, this failure can be no basis for liability." The plaintiff contends that the legislative intent behind section 668.10(1) was to make individuals bear the burden of the negligence of state employees, but only when the municipality completely fails to place, erect, or install a traffic control device. Plaintiff thinks immunity is limited to situations where the hazard is unknown to the municipality and does not extend to those where traffic control devices have been negligently placed or installed. In other words, once the hazard is identified by the installation or placement of a regulatory device, immunity ceases. Plaintiff argues that the hazard was identified here and an inappropriate warning sign was placed an inappropriate distance from a highway curve and, under these circumstances, statutory immunity does not apply.

I. In *Metier v. Cooper Transport Co., Inc.*, 378 N.W.2d 907 (Iowa 1985), we summarized that we follow several general principles of statutory construction:

> We may consider the language used in the statute, the object sought to be accomplished, the ends and mischief sought to be remedied, and place a reasonable construction on the statute which will best effectuate its purpose rather than one which will defeat it. We must examine both the language used and the purpose for which the legislation was enacted and consider all parts together without giving undue importance to one single or isolated portion.

*Id.* at 912. In *Metier* we also stated that the legislative intent behind section 668.10(1) can "only be viewed as a continuation of a discernible current trend to make indi-

3. Dianna Jo Saunders, a minor, brought this suit by her father and next friend. Both her parents joined as plaintiffs. For simplicity we refer to the plaintiffs in the singular.

vidual citizens bear the sole burden of the negligence of state employees." *Id.* at 913.

We also interpreted section 668.10(1) in *Hershberger v. Buena Vista County,* 391 N.W.2d 217 (Iowa 1986), in which one of the specifications of negligence was that the county placed a right turn sign upon a road which turned left. We held that the immunity provision did not apply because the petition alleged, not a failure to install the device, but rather alleged it was installed in a negligent manner. *Id.* at 220.

The plaintiff here overreacts to our *Hershberger* opinion. It is not authority for imposing liability for the manner in which any highway sign is placed. We did not suggest that a decision to place a traffic sign automatically carries with it a waiver of immunity under the statute.

In the present case we note that one of the three specifications complains of the failure to post speed signs. This highway engineering choice is a matter plainly within the scope of immunized negligence. The other two specifications, the ones addressing the distance and the nature of the signs, present a closer question. But we think they also concern matters which the legislature has immunized from liability.

According to plaintiff this case involves an alleged mishandling of signs in placing them after a decision about their placement was reached. She thinks the situation is like the one in *Hershberger*; the county decided to place signs in the area of the curves and failed to do so in accordance with the MUTCD requirements. But we think the negligence alleged here differs in a significant way.

The negligence asserted in *Hershberger* (a right turn sign for a left turn) consisted of a departure from the decision reached by the highway authorities. There was no complaint against the underlying decision to place a sign. The negligence asserted in the present case does address the underlying decision which was to place the sign as and where it was in fact later placed. In other words, the negligence asserted here complains of a decision concerning placement of road signs; the holding in *Hershberger* is limited to complaints about the execution of such a plan.

Another observation supports our conclusion. The county clearly would have been immune from liability if it had erected no signs at the scene. For immunity to be lost it must appear as a minimum that the signs were erected in such a manner as to mislead or endanger the driver. We think the allegations here all come down to decisions about whether or where to place traffic signs. Negligent decisions of this kind are precisely the ones which section 668.10(1) immunizes from liability. The trial court was in error holding otherwise.

II. The statute provides that negligence can be asserted for a failure to maintain a sign (as distinguished from a failure to place one). Plaintiff separately[4] urges that the challenged specifications amount to a failure to maintain the traffic control device. The argument, as we understand it, is that the sign was placed at a time the road was gravel and, in order to be "functionally" maintained, had to be re-evaluated when the road was resurfaced. Asphalt and the expected speed of vehicles on it might render the earlier sign inappropriate.

We recognize the MUTCD includes references to both physical and functional maintenance. But we do not agree that the specifications here amount to the sort of maintenance which section 668.10(1) designates as appropriate for liability. No matter how the challenged county activity is defined or labeled, it comes down to a choice of whether or where to place signs. A decision whether to replace this sign, to move it, or to supplant it with one or more other signs, is not a matter of maintenance under the statute. On the contrary such an action is a matter of deciding to place signs, for which the county cannot be held liable.

The judgment of the trial court is reversed and the case remanded with directions to enter an order sustaining the

4. We do not concede this assignment differs from the one we have already rejected.

county's motion for a partial summary judgment.

REVERSED AND REMANDED.

All Justices concur except CARTER, J., who dissents.

CARTER, Justice (dissenting).

I dissent. I believe the district court's interpretation of the immunizing provisions of section 668.10(1) was clearly correct and follows the meaning which this court attributed to that statute in *Hershberger v. Buena Vista County,* 391 N.W.2d 217, 220 (Iowa 1986).

In *Hershberger,* we recognized that the immunizing provisions of this statute only apply to a *"failure* to place, erect, or install a [regulatory sign or device]." In considering that aspect of the statutory language, we stated:

> The allegations of paragraph 5(b) of the petition [involving the placement of a right-turn sign where the road turned left] do not involve an alleged failure to place, erect, or install a traffic control device. Rather, these allegations suggest that a warning sign was installed in a negligent manner. Because the provisions of section 668.10(1) do not insulate the county from liability for negligence of this type, the district court erred in removing these issues from the case prior to trial.

*Id.*

The majority now suggests that it is incongruous to insulate the public body from liability for a failure to provide adequate warning signs for road hazards and yet hold the public body liable for the placement of signs which are deficient for the purpose to be served. This approach may be described as the "any sign is better than no sign" theory. I submit that this theory does not stand up when tested by common experience. It is an inescapable conclusion that members of the motoring public become conditioned to rely on traffic control devices. A very significant feature of such reliance is that a misleading sign can, indeed, constitute a greater hazard than no sign at all.

To avoid the clear implications of *Hershberger,* the majority attempts to distinguish that case on its facts. The opinion suggests that, unlike *Hershberger,* the deficiency in the warning sign employed by the county in the present case is more properly characterized as a failure to warn than as an affirmative misdirection. I do not believe the facts before the court on the summary judgment motion support that distinction. A finder of fact could determine that the sign in question had not been posted a sufficient distance in advance of the approach to the curve. Because curve warning signs are routinely placed at a prescribed minimum distance in advance of an approaching curve, motorists have become conditioned to rely on such placement in adjusting their road speed. A misplacement of the sign at less than the prescribed minimum distance can therefore be misleading and can constitute an affirmative misdirection as to the nature of the approaching hazard.

I would affirm the order of the district court.