Linda Louise PHILLIPS, Deceased, By and Through the Duly Appointed Executor, Robert M. PHILLIPS, and Kristina L. Phillips, By and Through Robert M. Phillips, Natural Father and Next Best Friend, Appellants,

v.

The CITY OF WAUKEE, Iowa, and The County of Dallas, Iowa, Duly Organized Municipalities in the State of Iowa, Appellees.

The CITY OF WAUKEE, Iowa, and The County of Dallas, Iowa, Third–Party Plaintiffs,

v.

David VAN GINKEL and Jack Van Ginkel, Third–Party Defendants.

No. 89–1820.

Supreme Court of Iowa.

March 20, 1991.

Marc A. Humphrey of Humphrey and Haas, P.C., Des Moines, for appellants.

Robert Koop Johnson of Whitfield, Musgrave & Eddy, Des Moines, for appellee City of Waukee, Iowa.

Carlton G. Salmons of Austin, Gaudineer, Austin, Salmons & Swanson, Des Moines, for appellee County of Dallas, Iowa.

Considered by HARRIS, P.J., and SCHULTZ, LAVORATO, NEUMAN, and ANDREASEN, JJ.

HARRIS, Justice.

This suit against a city and county [1] resulted from a tragic fatal automobile accident. The suit is grounded on a claim that traffic control devices at the scene were negligently placed. The trial court entered summary judgment for the defendants and we affirm.

Near but within the city limits of Waukee, in Dallas County, Ashworth Drive intersects with University Avenue. Ashworth Drive runs north and south at this point, and University runs east and west.

As plaintiff's decedent, Linda Louise Phillips, drove her automobile southward on Ashworth Drive toward this intersection there were no traffic control devices or signs to govern her approach or entry into the intersection. David Van Ginkel approached the intersection in a westerly direction on University Avenue. Westbound traffic at this point is governed by a yield sign. An accident investigator fixed Van Ginkel's pre-impact speed at fifty-three miles per hour.

Van Ginkel failed to yield and collided with the Phillips' vehicle within the intersection. Linda Phillips was killed in the collision; her daughter Kristina, a passenger in her vehicle, was injured.

Robert M. Phillips, Linda's surviving husband and executor, brought this action against Dallas County and the City of Waukee for Linda's estate and also as father and next friend of Kristina. The suit alleges the county and city were negligent in failing to maintain [2] adequate traffic devices at and near the intersection.

I. Any possible liability for the city or county on such a theory has been severely restricted by statute. Iowa Code § 668.10(1) (1991).[3] A small and carefully circumscribed area of potential liability for the placement of traffic signs remains in the face of section 668.10(1), as spelled out in *Hershberger v. Buena Vista County*, 391 N.W.2d 217 (Iowa 1986), and later recognized in *Saunders v. Dallas County*, 420 N.W.2d 468 (Iowa 1988). These cases leave open the possibility that a public body can be called to answer in tort under Iowa Code chapter 668 for placing signs which *mislead*. *Saunders*, 420 N.W.2d at 472 ("For immunity to be lost it must appear as a minimum that the signs were erected in such a manner as to mislead or endanger the driver.").

Plaintiff in this case contends his suit qualifies as a claim that the placement of the signs misled Van Ginkel, thus constituting negligence for which defendants might not be immune. In granting summary

---

1. A separate suit against one of the drivers, David Van Ginkel, was settled. Van Ginkel was later brought into this suit as a third-party defendant.

2. Section 668.10(1) expressly exempts maintenance from the sweep of the immunity it creates for the placement, erection, or installation of traffic control devices. Because liability can still attach for negligence in the maintenance of a traffic sign, a plaintiff asserting a claim of negligent placement frequently labels the claim as one of negligent maintenance. Plaintiff in this case made such a claim in his petition but does not press it on appeal. Plaintiff's claims plainly assert the devices were inadequate to warn drivers of potential danger as they approached the intersection. No facts are alleged which would support a claim that the signs were

not preserved in their original condition. Clearly there is no support for a claim that signs were negligently maintained.

3. Iowa Code § 668.10(1) states:

In any action brought pursuant to this chapter [comparative fault], the state or municipality shall not be assigned a percentage of fault for any of the following:

1. The failure to place, erect, or install a stop sign, traffic control device, or other regulatory sign as defined in the Uniform Manual for traffic control devices adopted pursuant to section 321.252. However, once a regulatory device has been placed, created or installed, the state or municipality may be assigned a percentage of fault for its failure to maintain the device.

judgment for defendants the trial court rejected this contention.

Plaintiff contends that Van Ginkel, as he approached the intersection, was not provided with a "yield ahead" sign, only with a "crossroad ahead" sign, some 579 feet east of the intersection. It is said this misled Van Ginkel concerning the nature of the intersection. Plaintiff also complains that the intersection was confusing in that he alleges northbound drivers on Ashworth and eastbound drivers on University were controlled by stop signs, whereas Van Ginkel was confronted only by a yield sign. The claimed confusion, it is said, is aggravated by the fact that the southbound drivers on Ashworth were controlled by neither a yield or stop sign. Plaintiff also complains the size of the yield sign controlling Van Ginkel, though oversized and lighted at night, was still smaller, and closer to the intersection, than department of transportation recommendations. Plaintiff believes Van Ginkel should also have faced a flashing yellow beacon as he approached the intersection.[4]

We believe the trial court correctly rejected plaintiff's contentions for two reasons. First, plaintiff's complaints concerning the sign selection and placement go only to their *sufficiency* to warn the motoring public, a matter which section 668.10(1) clearly immunizes from tort liability. *Saunders*, 420 N.W.2d at 472 (failure to post signs is an "engineering choice [which] is plainly within the scope of immunized negligence"). There is nothing in plaintiff's complaints to suggest the motoring public could be *misled*, as in *Hershberger*, 391 N.W.2d at 220 (right turn sign placed upon a road which turned left was negligently installed, and placement was not immunized from liability).

Another special fact in this case also supports the grant of summary judgment. Van Ginkel was not confused or misled about the traffic controls at the intersection. The record is replete with evidence that he had driven through this intersection several times daily for many years. Van

Ginkel in fact stated in his deposition that he knew a yield sign existed. A driver can scarcely be said to have been misled who knew of the approaching warning signs and was familiar with the intersection. The proximate cause of the collision resulted, not from any negligence of the city or county, but rather from the driving of Van Ginkel.

II. On appeal plaintiff mounts a constitutional attack on the statutory immunity created by section 668.10(1), asserting violations of equal protection, due process, and a right to a jury trial. We choose to pass serious reservations concerning whether this issue was properly preserved for our consideration and uphold the constitutionality of the statute. We have said:

whether or not the state or any of its political subdivisions or governmental agencies are to be immune from liability for torts is largely a matter of public policy. The legislature, not the courts, ordinarily determines the public policy of the state.

*Boyer v. Iowa High School Athletic Ass'n*, 256 Iowa 337, 347, 127 N.W.2d 606, 612 (1964).

In *Graham v. Worthington*, 259 Iowa 845, 860, 146 N.W.2d 626, 636–37 (1966), after noting that the constitutional challenge is to be resolved on the rational basis test, we stated the purpose of the state tort claims Act. We said it is "to impose upon all people of the state the burden, expense and cost which arise from tortious damage to property or injuries to persons by the officers, agents and employees of the state government." *See also Metier v. Cooper Transport Co., Inc.*, 378 N.W.2d 907, 913 (Iowa 1985) (same). In *Beeler v. Van Cannon*, 376 N.W.2d 628, 630 (Iowa 1985), we held that:

[t]he legislative purpose in enacting chapter 668 was to review the concept of comparative fault and to sort through a number of related tort principles, deciding whether they should be changed. Where changes were thought to be in the public interest the *legislature* was to de-

---

**4.** On appeal plaintiff for the first time attempts to introduce a claim of faulty road design. The attempt comes too late and we give the claim no consideration.

termine the nature and extent of any change, and its effective date.

(Emphasis added.)

We cannot say that a rational basis for section 668.10(1) does not exist. We accordingly reject plaintiff's equal protection challenges. We reject his due process challenge on the basis of our holding in *Builders Transport, Inc. v. State,* 421 N.W.2d 539, 542 (Iowa 1988) (statute abolishing suits against the state based on negligent supervision did not amount to unconstitutional deprivation of property).

Plaintiff's claim that section 668.10 unconstitutionally denies him a right to a jury trial is also without merit. *See State ex rel. Bishop v. Travis,* 306 N.W.2d 733, 735–36 (Iowa 1981) (statutory right to civil jury trial may be allowed for one type of paternity action and withheld for another); *see also Danner v. Hass,* 257 Iowa 654, 658, 134 N.W.2d 534, 537 (1965).

III. A number of other issues become moot and need not be reached because of our determination that the city and county are immune from liability. Summary judgment was properly entered.

AFFIRMED.