Arlene M. SULLIVAN, as Executor
of the Estate of Diane Mary
Sullivan, Appellant,

v.

Jeffrey Alan WICKWIRE, James Earl
Bender, City of Cedar Rapids and Arch-
er–Daniels–Midland Company a/k/a
ADM Corn Sweeteners, Defendants,

and

State of Iowa, Appellee.

No. 90–238.

Supreme Court of Iowa.

Oct. 16, 1991.

Rehearing Denied Nov. 26, 1991.

Tom Riley and Gerald J. Kucera of Tom
Riley Law Firm, P.C., Cedar Rapids, for
appellant.

Bonnie J. Campbell, Atty. Gen., and John
R. Perkins, Deputy Atty. Gen., for appel-
lee.

Considered by HARRIS, P.J., and
SCHULTZ, CARTER, LAVORATO, and
NEUMAN, JJ.

NEUMAN, Justice.

This case arises out of a fatal automobile
collision on U.S. Highway 30 where it pass-
es by the Archer–Daniels–Midland plant
(hereafter "ADM") in southwest Cedar
Rapids, Iowa. At the time of the collision,
plumes of steam from the factory's vapor

towers had combined with cold climatic conditions to create a dense fog across the highway. Diane Sullivan was killed when her vehicle disappeared into the blinding fog. She apparently collided with a vehicle traveling ahead of her and was then struck by the vehicle that followed her.

Diane's mother, plaintiff Arlene Sullivan, brought suit in her own behalf and as the executor of Diane's estate against ADM, the other drivers, the City of Cedar Rapids, and the State of Iowa. ADM and the individual drivers settled with plaintiff prior to trial. Because the evidence disclosed no city responsibility for this section of the highway, the court directed a verdict in its favor without resistance by plaintiff. Trial then proceeded against the State on three theories: negligent location of the highway, negligent highway design, and failure to adequately warn of a dangerous condition on the road.

The State ultimately prevailed on a motion to direct verdicts in its favor on the location and design issues. Thus the case was submitted to the jury on the failure to warn theory only.

From a verdict for the plaintiff, both parties now appeal. Plaintiff's principal complaint concerns the court's refusal to enter judgment in her favor in accordance with an instruction that told the jury plaintiff's recovery would be reduced only by the amount of fault, if any, attributed to her. Plaintiff also challenges the directed verdicts, claiming that construction of the highway involved operational, not discretionary, decisions that subjected the State to liability for negligence. Finally, the State's cross-appeal contests the court's refusal to direct a verdict in its favor consistent with Iowa Code section 668.10(1) (1989) on the failure to warn issue.

Our review is for the correction of errors at law. Because of errors in the court's instructions and directed verdict rulings, we must reverse and remand for a new trial.

I. Sullivan contended at trial that the State was negligent in (1) choosing the site for this section of Highway 30, and (2) for implementing a highway design that magnified, rather than minimized, the dangerous effects of the vapor plume that crossed the highway. At the close of evidence the State moved for a directed verdict, arguing it was immune from any liability on these grounds because of the "discretionary function" exception of the Iowa Tort Claims Act. *See* Iowa Code § 25A.14(1) (1989). The district court found the State's actions were discretionary in nature and sustained the State's motion for a directed verdict on these issues.

The Iowa Tort Claims Act, which largely abolishes the common-law doctrine of sovereign immunity, contains a series of exceptions, one of which is the subject of this appeal. Section 25A.14 provides, in pertinent part:

> The provisions of this chapter shall not apply with respect to any claim against the state, to:
>
> 1. Any claim based upon ... the exercise or performance or the failure to exercise or perform a *discretionary function* or duty on the part of a state agency or an employee of the state, whether or not the discretion be abused.

Iowa Code § 25A.14(1) (emphasis added). This statutory language mirrors that found in the federal tort claims act, *see* 28 U.S.C. § 2680(a), and has been interpreted as intending "to prevent judicial 'second-guessing' of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort." *United States v. Varig Airlines*, 467 U.S. 797, 813–14, 104 S.Ct. 2755, 2765, 81 L.Ed.2d 660, 674–75 (1984).

To determine whether a decision challenged under chapter 25A is discretionary, we have adopted the planning/operational dichotomy set forth in *Dalehite v. United States*, 346 U.S. 15, 73 S.Ct. 956, 97 L.Ed. 1427 (1953). *See, e.g., Butler v. State*, 336 N.W.2d 416, 419 (Iowa 1983). As we stated in *Butler*, "[t]he difficulty lies in determining when the planning level decisions stop and decisions on the operational level begin." *Id.*

■ Like the district court, we are convinced that choosing a site for the highway

was a political decision involving social, economic, and policy decisions protected by section 25A.14(1). The record reveals that the State held public hearings and debated various resolutions as it planned the location of the highway. The process was political in nature and obviously involved policy judgments. In finalizing the highway's exact location, the highway commission considered the geographic impact of nearby creeks, railroads, and a federally protected "greenbelt" area, among other factors. In short, deciding where to locate the highway involved precisely those discretionary policy decisions that section 25A.14(1) seeks to protect.

■ The design of the highway presents a different question, however. Relying on decisions from other jurisdictions the State insists that the entire roadway design process involves a series of policy determinations that are discretionary in nature. *See, e.g., Rayford v. United States*, 410 F.Supp. 1051, 1052 (D.Tenn.1976) (government immune from challenge to design of interstate highway); *Patton v. United States*, 549 F.Supp. 36, 38 (W.D.Mo.1982) (design of road by Corps of Engineers was discretionary); *Fireman's Fund Am. Ins. v. United States*, 482 F.Supp. 893, 895–96 (D.Or.1979) (government immune from challenge to design of park road).

This court, however, has traditionally interpreted the discretionary function exception more narrowly. In *Lewis v. State*, 256 N.W.2d 181 (Iowa 1977), for example, we considered the case of a motorist who sued the state for negligent design of a highway. After reviewing the distinctions between planning and operational decisions, we allowed the claim to proceed, stating:

> In the present case plaintiffs' claims do not focus on the decision to build Interstate 29, a discretionary function, but on the alleged negligence of the State in *implementing* that decision. Consequently, section 25A.14(1) is not preclusive of plaintiffs' right to relief.

*Id.* at 195. *See also Butler*, 336 N.W.2d at 420 (design defect in placement of guardrails along interstate highway operational rather than policy decision); *Metier v. Cooper Transp. Co.*, 378 N.W.2d 907, 911 (Iowa 1985) (failure to carry out signing policy was operational in character). In this connection we have often cited with approval *State v. Webster*, 88 Nev. 690, 504 P.2d 1316 (1972). There the Nevada Supreme Court conceded that the decision of whether to construct a highway was discretionary, but went on to state:

> Once the decision was made to construct a controlled-access freeway the State was obligated to use due care to make certain the freeway met the standard of reasonable safety for the traveling public.

*Id.* at 693, 504 P.2d at 1319 (quoted in *Butler*, 336 N.W.2d at 419; *Lewis*, 256 N.W.2d at 195).

Here Sullivan tendered proof that the State knew of the dangers of the factory-produced fog but did not implement design features that would have minimized the risk of accidents on the adjacent roadway. Thus, for example, plaintiff's expert mechanical engineer and vapor plume specialist noted that the forty-foot height of the highway placed the traveling public in close proximity to the vapor-emitting stacks. The evidence also revealed that one of the State's own design engineers proposed the installation of baffles along the highway to divert the vapor upward and prevent it from glazing the highway and obstructing motorists' vision. This suggestion, however, was never studied or pursued by the department.

As we stated in *Stanley v. State*, 197 N.W.2d 599, 603 (Iowa 1972), "[e]very act involves discretion." Not every discretionary act involves policy rather than operational decision making, however. We continue to be convinced that highway design decisions are not necessarily governed by the social and political decisions implicated in the location planning. Given the record in this case, the court should have drawn the line between the policy decisions needed to locate the highway and the operational decisions needed to safely implement its design.

Accordingly, we hold the State is not immunized from plaintiff's allegations of

negligence in design of the highway. The issue should have been submitted to the jury. Thus we reverse the district court and remand the case for new trial.

Because the case must be remanded for a new trial, we address two of the parties' other contentions that are likely to affect retrial.

II. In accordance with Iowa's comparative fault statute, the court directed the jury to answer special interrogatories indicating plaintiff's total damages (without reduction for contributory fault, if any) and the percentage of total fault allocated to plaintiff, the settling parties, and defendant State of Iowa. Iowa Code § 668.-3(2)(a) and (b). This special verdict form was preceded by the court's Instruction 25, which is at the heart of this controversy:

> After you have compared the conduct of all parties, if you find Diane Mary Sullivan was at fault and her fault was more than fifty percent of the total fault, the plaintiff, Arlene M. Sullivan, administrator of the estate of Diane Mary Sullivan, cannot recover damages.
>
> However, if you find Diane Mary Sullivan's fault was fifty percent or less of the total fault, then I will reduce the total damages by the percentage of her fault.

This instruction, patterned after Iowa Civil Jury Instruction 400.3, omitted the following language that the stock instruction directs the judge to add when there are settling parties:

> If you assign a percentage of fault to the settling party _____, I will reduce the amount of plaintiff's recovery by that percentage.

Neither plaintiff nor the State made note of or otherwise objected to the omission. The jury, however, suspected something was amiss. During deliberations it sent out the following note:

> With regard to Instruction (25)—will award be reduced by all parties at fault or only Sullivan's percentage of fault?

After consulting with counsel, the court answered by reiterating its earlier message:

> I will only reduce any damage award to plaintiff by Diane Mary Sullivan's percentage of fault.

The jury then returned a verdict assessing plaintiff's damages at $90,000, and allocating fault as follows: ADM, forty-five percent; State of Iowa, thirty-five percent; Diane Sullivan, twenty percent; drivers of other cars, zero percent.

Despite its earlier instructions about the effect of the jury's verdict, the district court entered a judgment for plaintiff that reduced her recovery by the percentage of fault attributed to the settling parties. In doing so the court applied the "proportionate credit rule" recognized by this court in *Thomas v. Solberg*, 442 N.W.2d 73, 78 (Iowa 1989). Thus, instead of receiving $72,000 ($90,000 less Sullivan's twenty percent fault), plaintiff was awarded judgment against the State for only $31,500 ($90,000 × State's thirty-five percent fault).

On appeal, plaintiff does not dispute the propriety of the court's judgment under Iowa comparative fault law. She argues only that the court was bound by its own erroneous instruction to reach a different result. In the alternative, she alleges that she is entitled to a new trial because the court's instruction misled the jury in its calculation of plaintiff's projected recovery.

■ There is considerable merit in plaintiff's claim to a $72,000 judgment. In Iowa and elsewhere, an instruction submitted to the jury without objection becomes the law of the case and will not be disturbed on appeal. *Tarrell v. Erdmann*, 221 N.W.2d 504, 507 (Iowa 1974); *Froman v. Perrin*, 213 N.W.2d 684, 689 (Iowa 1973). *See generally* 75 Am.Jur.2d *Trial* § 927, at 792 (1974) (citing *Tarrell*). The State attempts to discredit the rule in the present case by arguing the jurors' sole task was to find damages and allocate percentages of fault, leaving to the court the job of applying mathematical formulas to achieve the correct judgment. We do not believe, however, that the jury's understanding of the impact of its verdict is irrelevant to its decision-making responsibilities. In keeping with Iowa Code section 668.3(5), our prior decisions make clear that the court

must instruct the jury with respect to the effect of answers given to special interrogatories, and the court's failure to do so may constitute reversible error. *Schwennen v. Abell,* 471 N.W.2d 880, 887 (Iowa 1991); *Reese v. Werts Corp.,* 379 N.W.2d 1, 3–4 (Iowa 1985).

We need not decide in the present case whether the court's error merits new trial or merely an amended judgment, because other errors committed by the court demand a new trial. On retrial, we trust the court will instruct the jury in conformity with Iowa Code section 668.3(5) and the designated provisions of Iowa Civil Jury Instruction 400.3.

■ III. For its cross-appeal, the State urges us to reverse the district court's decision not to direct a verdict in the State's favor on plaintiff's failure to warn claim. The record reveals that the State installed one sign in the affected area of the highway that said "Be Alert for Fog." Plaintiff alleged that more warning signs should have been erected. She also criticized the warning given for its failure to advise the motoring public of what to do (*e.g.,* slow down or pull off to the shoulder) in the event a penetrating fog occurred.

The State asserts immunity from these claims pursuant to Iowa Code section 668.-10(1), which reads in part:

In any action brought pursuant to this chapter, the state or a municipality shall not be assigned a percentage of fault for any of the following:

1. The failure to place, erect, or install a stop sign, traffic control device, or other regulatory sign as defined in the uniform manual for traffic control devices....

In a number of decisions we have considered the application of section 668.10(1) in a variety of factual settings. *See Metier v. Cooper Transp., Inc.,* 378 N.W.2d 907, 912–13 (Iowa 1985) ("deer crossing" sign a traffic control device within meaning of statute); *Hershberger v. Buena Vista County,* 391 N.W.2d 217, 218, 220 (Iowa 1986) (drawing distinction between negligent failure to erect a sign and negligent installation; state immune from the former

but not the latter); *Saunders v. Dallas County,* 420 N.W.2d 468, 472 (Iowa 1988) (distinguishing *Hershberger,* where the sign placed was misleading, from situation in which underlying placement decision is attacked).

We recently revisited section 668.10(1) in *Phillips v. City of Waukee,* 467 N.W.2d 218 (Iowa 1991). There we observed that *Hershberger* and *Saunders* leave only "[a] small and carefully circumscribed area of potential liability for the placement of traffic signs...." *Phillips,* 467 N.W.2d at 219. Thus we affirmed the court's grant of summary judgment for the city, deciding the only avenue of liability left to plaintiffs is "for placing signs which *mislead.*" *Id.*

It appears to us that plaintiff's claims of deficient warning fall squarely within the statutory immunity described in *Saunders.* The complaint clearly concerns the decision whether or not to erect warning signs. Moreover, the sign that was in place cannot fairly be said to be misleading or negligently installed. At best, plaintiff can only claim the State should have done more to inform motorists of the potential danger ahead. Such a decision, however, like the State's failure to erect speed signs in *Saunders,* is a matter "plainly within the scope of immunized negligence." *Saunders,* 420 N.W.2d at 472; *accord Phillips,* 467 N.W.2d at 220. *But see Hershberger,* 391 N.W.2d at 220 (situation calling for other than "inanimate devices" to warn of dangerous condition fall outside section 668.10(1)). Under the record made in this case, the State is clearly immune from liability for failure to warn. Thus it was error for the court to submit this specification of negligence to the jury.

On a related matter, we note that the court combined with the failure to warn issue an instruction that the jury could find the State negligent if it "had a reasonable opportunity to correct ... the condition and did not." We agree with the State that this specification of negligence was never specifically pleaded by plaintiff against the State (as opposed to ADM). Moreover, the broad wording of the instruction suggests highly questionable liability by the State

for acts of third parties. *See Anthony v. State*, 374 N.W.2d 662, 668 (Iowa 1985). We need not dwell on any error in this regard, however, as we trust the matter will be more precisely pleaded, proved, and instructed on retrial.

IV. We have considered the other issues raised by the parties in their briefs and conclude that they were decided correctly by the district court and do not merit our attention here. Thus we remand this case for retrial in accordance with this opinion. The clerk shall divide the costs of this appeal equally between appellant and appellee.

REVERSED AND REMANDED.